42 Cal.App.4th 569 (1996)
49 Cal. Rptr.2d 713
In re HERACLIO A., a Person Coming Under the Juvenile Law.
SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, Plaintiff and Respondent,
v.
DIANA A. et al., Defendants and Appellants.
Docket No. H013975.
Court of Appeals of California, Sixth District.
February 7, 1996.
*571 COUNSEL
Kimball J.P. Sargeant and Enid Evans Baggett, under appointments by the Court of Appeal, for Defendants and Appellants.
Steven M. Woodside, County Counsel, and Jeffrey L. Bryson, Deputy County Counsel, for Plaintiff and Respondent.
George W. Kennedy, District Attorney, and Robert J. Masterson, Deputy District Attorney, for Minor.
OPINION
MIHARA, J.
The juvenile court conducted a hearing pursuant to Welfare and Institutions Code section 366.26[1] and ordered the minor Heraclio (Rocky) A. freed for adoption. John A. and Diana A., his parents, challenge the order on the following grounds: (1) the juvenile court lacked subject matter jurisdiction; (2) they were deprived of their right to due process; and (3) there was insufficient evidence to support a modification of the permanent plan. For the reasons stated below, we affirm the order.

Statement of Facts
Ms. A. has a history of chronic substance abuse which results in incarceration and impairment of her ability to parent. She also has a history of moving and leaving her children with friends or relatives without informing *572 them of her whereabouts. Mr. A. has a similar history of chronic substance abuse and incarceration.
Ms. A.'s daughters, Basilia and Anita, were made dependents of the juvenile court in 1980. They were placed with Ms. A. in 1985, but removed again in 1986 due to her incarceration. The court eventually ordered permanent out-of-home placement.
Mr. and Ms. A.'s daughter Rachel became a dependent of the juvenile court in 1987 due to Ms. A.'s use of narcotics both during and after the pregnancy. Ms. A. relinquished her parental rights in 1988.
On July 13, 1990, Mr. and Ms. A.'s sons, Johnny and Peter, were taken into custody because their caretaker was drunk. They also eventually became dependents of the juvenile court.
Rocky was born on December 15, 1988. He was first removed from his parents' custody on August 6, 1990. On August 10, 1990, the juvenile court placed him with his maternal great-aunt, Rosemarie G. On September 27, 1990, Rocky was made a dependent of the court. He was placed with Ms. A. on condition that both she and Rosemarie G. continue living with a friend under the supervision of the department of family and children's services (DFCS). After Mr. A. was released from incarceration on November 30, 1990, he joined the family. The DFCS provided reunification services.
On February 16, 1991, Ms. A. tested positive for cocaine. Mr. A. had missed several drug tests. In March 1991, Mr. and Ms. A. disappeared with Rocky and his two brothers. After the six-month review hearing, the prior orders remained in effect.
On July 29, 1991, Mr. and Ms. A. were arrested for being under the influence of heroin. They admitted they had been living on the streets with Rocky and his brothers. Ms. A. was returned to state prison on a parole violation. Rocky was placed first in the children's shelter and then in a foster home with his brothers. Mr. A. was released from custody on July 31, 1991, and disappeared. He visited the children three times in October, but then disappeared again.
On August 15, 1991, Rocky was moved to the Quintero foster home where he continues to live. On December 20, 1991, the juvenile court sustained the supplemental petition and ordered continued reunification services. The DFCS prepared a new service plan.
On August 11, 1992, the court ordered continued reunification services. The DFCS drafted another service plan.
*573 Both Mr. and Ms. A. were arrested in August 1992. Ms. A. was released from custody on September 2, 1992. Mr. A. was released from custody in November or December 1992. The DFCS prepared a new service plan in December 1992. In January 1993, Mr. A. was arrested and sentenced to state prison.
At the 18-month review hearing on March 16, 1993, the juvenile court found that return of Rocky to his parents would create a substantial risk of detriment to his physical and emotional well-being. The court also terminated reunification services. The only contact allowed between Rocky and Mr. A., who was in state prison, was by letter. Mr. A. never wrote to his son.
In July 1993, the juvenile court selected guardianship as the permanent plan for Rocky and appointed Zenaida Quintero as Rocky's guardian. Ms. Quintero felt that she could not adopt Rocky due to her age. The court also ordered eight hours of unsupervised visitation between Ms. A. and Rocky every other week, beginning on August 22, 1993.
Effective November 17, 1993, visitation was reduced to once a month for two hours. The visitation was supervised at Clover House. On June 27, 1994, dependency over Rocky was dismissed.
On December 27, 1994, the DFCS filed a petition pursuant to section 388 and sought a section 366.26 hearing to change Rocky's permanent plan from guardianship to adoption. The petition acknowledged that dependency jurisdiction had been dismissed. The petition also alleged that Mr. and Ms. A. had disappeared for several months and Ms. Quintero now wanted to adopt Rocky.
The social worker prepared a report for the hearing. It stated that Ms. Quintero lived with her youngest son, 25-year-old Aurelio. Though concerned about her age, Ms. Quintero began considering adoption after Rocky asked to have his name changed to her name. Rocky had also become very close to Mr. Quintero and called him "Dad." Eventually Mr. Quintero and Ms. Quintero decided Mr. Quintero would adopt Rocky and Ms. Quintero would assume the role of grandmother. According to the social worker, Rocky was "quite astute" for his age about the concept of adoption. He stated he would be sad not to see his birth parents again, nevertheless, he was eager to be adopted. The report also stated that Mr. and Ms. A. had visited Rocky on September 14, 1993, December 6, 1993, January 31, 1994, and March 28, 1994.
Following the hearing pursuant to section 366.26, the juvenile court found the conditions which justified the initial assumption of jurisdiction under *574 section 300 still existed and that continued juvenile court jurisdiction was in the best interests of the minor. The juvenile court also terminated parental rights, continued Rocky in guardian placement, and referred Rocky for adoptive placement.

Discussion

I. Jurisdiction

(1) Appellants contend the juvenile court did not have subject matter jurisdiction to hear the petition for modification of the permanent plan under section 388, because it had previously dismissed its dependency jurisdiction.[2] Having reviewed the statutory scheme involving guardianships established as a result of implementation of a permanent plan pursuant to section 366.26, we conclude the juvenile court had subject matter jurisdiction in the instant case.
"The fundamental rule is that a court should ascertain the intent of the Legislature so as to effectuate the law's purpose, and in determining intent the court first turns to the words used. [Citation.]" (People v. Overstreet (1986) 42 Cal.3d 891, 895 [231 Cal. Rptr. 213, 726 P.2d 1288].)
Section 366.3 provides in relevant part: "(a) If a juvenile court orders a permanent plan of ... legal guardianship pursuant to Section ... 366.26, the court shall retain jurisdiction over the minor until ... the legal guardianship is established.... The court may continue jurisdiction over the minor as a dependent minor of the juvenile court following the establishment of a legal guardianship or may terminate its dependency jurisdiction and retain jurisdiction over the minor as a ward of the guardianship established pursuant to Section ... 366.26 and as authorized by Section 366.4."
In the instant case, the juvenile court terminated dependency jurisdiction and retained jurisdiction over Rocky as a ward of the guardianship pursuant to section 366.3. The question then becomes whether the juvenile court could subsequently resume its dependency jurisdiction in the instant case.
Section 366.3, subdivision (b)[3] provides that where the guardianship is revoked or terminated, the juvenile court may vacate its order dismissing *575 dependency jurisdiction. Here the petition did not seek, nor did the juvenile court order, termination of the guardianship and thus section 366.3, subdivision (b) is inapplicable.
However, section 366.3, subdivision (b) is not the only statute which authorizes the juvenile court to resume its dependency jurisdiction after it has dismissed such jurisdiction following the establishment of a guardianship. Section 366.4 authorizes jurisdiction over the guardianship by the juvenile court. It states in relevant part: "Any minor for whom a guardianship has been established resulting from the selection or implementation of a permanent plan pursuant to Section ... 366.26 is within the jurisdiction of the juvenile court.... If no specific provision of this code or the California Rules of Court is applicable," the Probate Code is governing.
By incorporating the California Rules of Court, section 366.4 authorizes jurisdiction by the juvenile court to conduct hearings on petitions to modify guardianship orders. California Rules of Court, rule 1466(c) provides in relevant part: "A petition to terminate a guardianship established by the juvenile court, to appoint a successor guardian, or to modify or supplement orders concerning the guardianship shall be filed in juvenile court. ... [¶] ... [¶] (4) If the petition is granted and the court continues or resumes dependency, the court shall order that a new plan be developed to provide stability and permanency to the child." (Italics added.) Thus, by incorporating rule 1466, section 366.4 authorizes the juvenile court to resume its dependency jurisdiction in the instant case. Here the petition sought to modify the order concerning the guardianship. The juvenile court then granted the petition, resumed dependency jurisdiction, and ordered that Rocky be referred for adoptive placement.
Our interpretation is compatible with the intent of the Legislature in enacting section 366.4 and amending section 366.3 in 1990. In its analysis of Senate Bill No. 2232, 1989-1990 Regular Session, the Assembly Committee on Judiciary stated that the amendment "[p]rovides ... that persons subject to a guardianship established under the Dependency Law are within the jurisdiction of the juvenile court." The author of the bill also outlined his comments as follows: "[I]t is important to include guardianships in the dependency law where the guardianship was created as a result of a permanent plan. One problem is with cases where the juvenile court needs to *576 re-examine the guardianship; there is no mechanism in current law to do this.... [¶] This bill statutorily recognizes a second type of guardianship, which is under the jurisdiction of the Juvenile Court and designed for minors who have been permanently removed from their parents' custody. A court may determine that adoption is not in the minor's best interests when a minor is not an infant, has had a continuing relationship with his or her parents, has been placed with a relative or someone else known to the family, or is residing with a family who cannot adopt the child for some reason. The court may then appoint the caretakers as guardians. [¶] The establishment and termination of this type of guardianship is different from that for a Probate Code guardianship (where parents or other interested persons can terminate the guardianship, notice of the guardianship must be given to a number of relatives, etc.). In the `dependency' guardianship, the court has continuing direct responsibility regarding the placement of the minor with the guardians and regarding the termination of the guardianship and establishment of a new guardianship. The procedure for exercising the court's continuing responsibility to the minor placed with a guardian is specified by this bill." The legislative intent was to recognize the differences between the two types of guardianships and to provide the juvenile court with continuing jurisdiction over guardianships established in juvenile court. Thus, the statutory scheme authorizes the juvenile court not only to exercise jurisdiction over these minors as wards of a guardianship, but also as dependents.[4]

II. Due Process

(2) Appellants next contend they were deprived of due process because termination of their parental rights was based only on a petition for modification. They claim the juvenile court should have considered their present circumstances.
In Cynthia D. v. Superior Court (1993) 5 Cal.4th 242, 253 [19 Cal. Rptr.2d 698, 851 P.2d 1307], the court stated: "Turning to the current statutory scheme, section 366.26 cannot properly be understood except in the context of the entire dependency process of which it is a part. Unlike the termination hearings evaluated in Santosky v. Kramer [(1982)] 455 U.S. 745 [71 L.Ed.2d 599, 102 S.Ct. 1388], and In re Angelia P. [(1981)] 28 Cal.3d 908 [171 *577 Cal. Rptr. 637, 623 P.2d 198], the purpose of the section 366.26 hearing is not to accumulate further evidence of parental unfitness and danger to the child, but to begin the task of finding the child a permanent alternative family placement. By the time dependency proceedings have reached the stage of a section 366.26 hearing, there have been multiple specific findings of parental unfitness. Except for a temporary period, the grounds for initial removal of the child from parental custody have been established under a clear and convincing standard (see § 361, subd. (b)); in addition, there have been a series of hearings involving ongoing reunification efforts and, at each hearing, there was a statutory presumption that the child should be returned to the custody of the parent. (§§ 366.21, subds. (e), (f), 366.22, subd. (a).) Only if, over this entire period of time, the state continually has established that a return of custody to the parent would be detrimental to the child is the section 366.26 stage even reached." Thus, the Cynthia D. court held the appellant was not denied due process where her parental rights were terminated based on a lesser standard of proof than clear and convincing evidence.
Similarly, here there were multiple findings of parental unfitness and several hearings involving reunification services. Having failed to reunify with Rocky during the requisite time period, appellants were not entitled to additional findings as to their fitness as parents. Thus, the mere fact that Rocky had been out of appellants' custody for two years beyond what the statutory shceme contemplated did not require the juvenile court to reconsider whether Rocky should have been returned to them.

III. Modification of Permanent Plan Due to Substantial Change of Circumstances

(3) Appellants also contend the juvenile court abused its discretion in changing the permanent plan from guardianship to adoption. They claim respondent failed to show the requisite substantial change in circumstances to modify the plan. More specifically, they contend Rocky did not need to be adopted in order to change his name, his birth parents had never visited him consistently, and Rocky was too young to express a desire to be adopted.
In order to grant a petition pursuant to section 388, there must be a substantial change in circumstances regarding the child's welfare and the requested modification of the prior order must be in the child's best interests. (In re Heather P. (1989) 209 Cal. App.3d 886, 891 [257 Cal. Rptr. 545].) The juvenile court's determination in a hearing under section 388 will not be disturbed by a reviewing court in the absence of an abuse of discretion. (In re Jasmon O. (1994) 8 Cal.4th 398, 415 [33 Cal. Rptr.2d 85, 878 P.2d 1297].)
Here the DFCS established that there was a substantial change in circumstances regarding Rocky's welfare. Rocky was completely bonded to the *578 Quintero family. They, in turn, decided that adoption, rather than guardianship, was possible for them. Adoption is the preferred permanent plan for a child who cannot be returned to the custody of his or her parents. (In re Heather B. (1992) 9 Cal. App.4th 535, 546 [11 Cal. Rptr.2d 891].) Thus, the fact that the current caretakers desired to provide more stability for Rocky constituted a substantial change in circumstances. The juvenile court did not abuse its discretion in granting the petition.

Disposition
The order is affirmed.
Premo, Acting P.J., and Elia, J., concurred.
A petition for a rehearing was denied March 7, 1996, and the opinion was modified to read as printed above. Appellants' petitions for review by the Supreme Court were denied April 25, 1996.
NOTES
[1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.
[2] The DFCS and the minor contend this issue has been waived by appellants' failure to object at the hearing. However, "subject matter jurisdiction cannot be conferred by consent, waiver, or estoppel." (Viejo Bancorp, Inc. v. Wood (1989) 217 Cal. App.3d 200, 207 [265 Cal. Rptr. 620].) Accordingly, the issue has not been waived.
[3] Section 366.3, subdivision (b) provides in relevant part: "If the court has dismissed dependency jurisdiction following the establishment of a legal guardianship, ... and the legal guardianship is subsequently revoked or otherwise terminated, the county department of social services or welfare department shall notify the juvenile court of this fact. The court may vacate its previous order dismissing dependency jurisdiction over the minor. [¶] Notwithstanding Section 1601 of the Probate Code, the proceedings to terminate a guardianship which has been granted pursuant to Section ... 366.26 shall be held in the juvenile court, unless the termination is due to the emancipation or adoption of the minor."
[4] Our interpretation of the statutory scheme is consistent with the recent amendment of section 366.3, subdivision (c). Section 366.3, subdivision (c) now provides in relevant part: "If, following the establishment of a legal guardianship, the county welfare department ... becomes aware of changed circumstances that indicate adoption may be an appropriate plan for the child, the department shall so notify the court. The court may vacate its previous order dismissing dependency jurisdiction over the minor and order that a hearing be held pursuant to Section 366.26 to determine whether adoption or continued guardianship is the most appropriate plan for the minor."