Filed 10/21/15  In re Ts.M. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Ts.M. et al., Persons Coming Under the Juvenile Court Law. | B259927 (Los Angeles County Super. Ct. No. CK90911) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. C.M., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Affirmed.

Anne E. Fragasso, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Stephen D. Watson, Deputy County Counsel, for Plaintiff and Respondent.

* * * * * *

Mother C.M. appeals from the court's order denying her petition for modification under Welfare and Institutions Code section 388.[1]  Mother requested that the court return the children to her home, or in the alternative, that the court reinstate her reunification services.  After she filed her notice of appeal, we took judicial notice of a minute order showing the court had granted a second section 388 petition by mother.  The court has reinstated mother's reunification services, increased her visitation, and given Los Angeles County Department of Children and Family Services (DCFS) discretion to place the children with mother.  She nevertheless contends the court erred when it did not return the children to her when she filed the first section 388 petition.  We disagree and affirm.

## FACTS AND PROCEDURE

Mother gave birth to Ts.M. and Ta.M. in September 2013.  She did not identify their father.  She had eight older children, all with open dependency cases.  Mother had not reunified with these children and had monitored visitation with them at the time of Ts.M. and Ta.M.'s birth.  These eight other children are not the subjects of this appeal.

In November 2012, mother enrolled in an in-patient drug treatment program as part of her reunification efforts in the siblings' cases.  She was unable to stay clean and began testing "dirty" in January 2013, after which the program expelled her.  She found out she was pregnant in March 2013 and admitted using while she was pregnant.  She used through April 2013 until she asked the program to readmit her in May 2013.  After testing clean on all of her May tests, the program readmitted her in June 2013.  Between June 25 and October 3, 2013, mother tested negative for drugs on all but one of her tests, including when she was tested at Ts.M. and Ta.M.'s birth in September.  She tested positive for codeine once because a doctor prescribed her Tylenol with codeine.

The court sustained a petition under section 300, subdivision (b) alleging mother had a history of illicit drug use, had used while pregnant with Ts.M. and Ta.M., and had eight other children who had received permanent placement services due to her illicit

_____

[1]     Further undesignated statutory references are to the Welfare and Institutions Code.

drug use. The court ordered reunification services including a drug/alcohol treatment program with aftercare, drug testing, a 12-step program, parenting and individual counseling, and monitored visitation. DCFS placed Ts.M. and Ta.M. in a foster home with a nonrelative caregiver.

In the six-month review report, DCFS reported that mother had been discharged from her residential treatment program after five months for "disorderly conduct." The program discharged her a week before her graduation date in December 2013. Approximately a month after her discharge, she enrolled in an outpatient program. In April 2014, she was discharged from that program after three months for relapsing and refusing to test. Mother admitted to using alcohol during a counseling session and appeared to be under the influence at the time.

When the social worker talked to mother just before the six-month review hearing in June 2014, mother agreed to drug test in three days' time. The social worker could not reach mother when she tried to contact mother later for that test.

Both Ts.M. and Ta.M. had been thriving and appeared to have a secure attachment to their caregiver. Mother missed a number of her weekly visits during the review period, but when she did visit, she displayed appropriate and nurturing behavior.

At the six-month review hearing, the court found returning the children to mother would create a substantial risk of detriment and terminated mother's reunification services. The court set the matter for a permanency planning hearing.

In October 2014, mother filed a section 388 petition five days before the permanency planning hearing. Mother wanted the court to either reinstate her reunification services and grant her unmonitored visits or return the children to her care. She was living at an in-patient rehabilitation program, had completed a parenting program, was in individual counseling, and was going to Alcoholics Anonymous (AA). She had been in this latest program since August 2014 and had tested negative on all her weekly drug tests during that time. A letter from mother's AA sponsor asserted that she had been "consistent in her sobriety since June 23, 2014." She had been consistently visiting with Ts.M. and Ta.M. every other Friday. She contended that she had been

"sober for 15 months" and had custody of her 17-year-old daughter, S.P. At the October 2014 hearing on the petition, mother's counsel noted that S.P.'s father had allowed the girl to live with mother. The court had not ordered S.P. returned to mother.

The court denied the section 388 petition, finding it was not in the best interests of the children to return them to mother or to reinstate her services. The court continued the permanency planning hearing for 90 days for approval of the foster mother's home study. The permanent plan was adoption by the foster mother.

Mother filed a timely notice of appeal from the order denying the section 388 petition. During the pendency of this appeal, we granted mother's request for judicial notice of a minute order describing proceedings on April 21, 2015. According to this minute order, the court granted a second section 388 petition filed by mother. The court reinstated mother's reunification services. It also ordered that mother's visits were to increase on a "stepped-up" basis, starting with one unmonitored visit per week for three weeks, and then two unmonitored visits per week for three weeks. DCFS also had discretion to release the children to mother and walk the matter on for a home-of-parent order. Further, the children's father had apparently been identified. The court declared B.M. to be the presumed father and ordered reunification services and monitored visitation for him. It also ordered the paternal grandparents' home to be assessed for placement. The court took the permanency planning hearing off calendar, in light of these orders.

**DISCUSSION**

Mother seems to recognize that her appeal is at least partially moot. Since she filed her notice of appeal, the court has reinstated her reunification services, increased her visitation, and given DCFS discretion to place Ts.M. and Ta.M. with her. Still, she contends the court erred in failing to return the children to her in October 2014, when she filed the first section 388 petition. We disagree.

Section 388 permits a parent of a dependent child to petition the court "to change, modify, or set aside any order of court previously made" based on a "change of circumstance or new evidence." (§ 388, subd. (a)(1).) "A ruling on a section 388 petition

4

is 'committed to the sound discretion of the juvenile court, and the trial court's ruling should not be disturbed on appeal unless an abuse of discretion is clearly established. [Citations.]' [Citation.] Thus, we may not reverse unless the juvenile court exceeded the bounds of reason, and we have no authority to substitute our decision for that of the lower court where two or more inferences can reasonably be deduced from the facts." (*In re D.B.* (2013) 217 Cal.App.4th 1080, 1088-1089.)

Mother had the burden of proving (1) changed circumstances or new evidence and (2) that the change in the court order would promote the best interests of the children. (§ 388, subds. (a)(1), (d); *In re D.B., supra*, 217 Cal.App.4th at p. 1089.) Mother had to show a genuine change in circumstances of such a significant nature that it required modification of the challenged order. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 529; *In re Heraclio A.* (1996) 42 Cal.App.4th 569, 577; *Ansley v. Superior Court* (1986) 185 Cal.App.3d 477, 485.) Factors to consider included "the seriousness of the reason for the dependency and the reason the problem was not overcome; the relative strength of the parent-child and child-caretaker bonds and the length of time the child has been in the system; and the nature of the change in circumstances, the ease by which the change could be achieved, and the reason the change was not made sooner." (*In re Aaliyah R.* (2006) 136 Cal.App.4th 437, 446-447.)

Mother did not show a genuine change in circumstances justifying a return of the children to her. Her assertion that she had been clean for 15 months when she filed the petition in October 2014 is not supported by the record. She was in a program for two months in late 2012 and early 2013 before she relapsed and was discharged. She was then in a program for approximately six months from June to December 2013. Again, she was discharged. Then, in early 2014, she completed another three months in a program before relapsing and being discharged again. When she filed the section 388 petition, she had been in a program for approximately two months. Thus, the claim that she had been clean for 15 months does not ring true. Even if we credit the letter from her AA sponsor, she had been clean since June 2014, which was only four months. It is the unfortunate nature of drug addiction that one must be clean for a much longer period "to

5

show real reform." (*In re Kimberly F., supra*, 56 Cal.App.4th at p. 531, fn. 9.) In short, mother had a pattern of getting clean and relapsing, and her most recent period of sobriety of two to four months was not a genuine change justifying a return of the children to her.

Moreover, her illegal drug use was a relatively serious reason for dependency jurisdiction. (*In re Kimberly F., supra*, 56 Cal.App.4th at p. 522.) Mother has not identified any reason for her failure to complete a program sooner—that is, before the court terminated reunification services—other than she "truly was not ready" before and "[t]his time around [has] changed [her] way of thinking." While mother had been visiting consistently with Ts.M. and Ta.M. every other week, and the visits went well, the children also had a secure attachment to their foster mother, who had cared for them since birth.

Mother was apparently doing well in recovery as of April 2015 because the court reinstated her reunification services, increased her visitation, and gave DCFS discretion to place the children with mother. She is to be commended for her latest efforts and what is hopefully the beginning of permanent sobriety. But we cannot say the court abused its discretion when it declined to return the children to mother's care in October 2014. The court acted reasonably when it decided that a return to mother's home would not promote the children's best interests at that time.

## DISPOSITION

The order is affirmed.


FLIER, J.

WE CONCUR:



BIGELOW, P. J.          RUBIN, J.


6