Filed 12/5/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re T.R., a Person Coming Under the Juvenile Court Law. | B329240 |
| | (Los Angeles County Super. Ct. No. 22CCJP04196A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| MIRACLE R., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Hernan D. Vera, Judge.  Motion to dismiss denied; appeal conditionally affirmed and remanded with directions.

Jane B. Winer, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, for Plaintiff and Respondent.

—————————————

In this case, we examine whether a juvenile court that has selected legal guardianship as the permanent plan for a child and terminated dependency jurisdiction retains authority to ensure compliance with the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and related California law (Cal-ICWA) (see Welf. & Inst. Code, §§ 224.2, 224.3, subd. (a) [1]) during prepermanency proceedings. We conclude that it does.

Miracle R. (Mother) appeals from the juvenile court's jurisdiction findings and disposition order removing her son, T.R., from her custody. Mother contends the Los Angeles County Department of Children and Family Services (Department) and the juvenile court failed to comply with their duties of inquiry under ICWA and Cal-ICWA. While this appeal was pending, the juvenile court selected legal guardianship as the permanent placement plan and issued an order terminating jurisdiction.

The Department moved to dismiss Mother's appeal on the ground it was moot because Mother did not appeal from the termination order. Mother urged this court to exercise its discretion to consider her appeal. We requested additional briefing regarding whether the juvenile court retained jurisdiction to remedy any ICWA violations if this court were to find reversible error and remand for further proceedings. We conclude the juvenile court has jurisdiction to ensure full

—————————————

[1]     All further references are to the Welfare and Institutions Code unless otherwise specified.

2

compliance with ICWA on remand.  The Department concedes, and we agree, the Department's ICWA inquiry was deficient.  We deny the motion to dismiss, and conditionally affirm the juvenile court's order with directions to ensure the Department complies with the inquiry and, if necessary, notice provisions of ICWA and Cal-ICWA.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Dependency Proceedings*

On March 7, 2023, the juvenile court sustained a petition by the Department alleging Mother and Jaylen P. (Father) had a history of violent physical and verbal altercations in T.R.'s presence.  The court found that Mother "brandished knives, screwdrivers and other objects during domestic violence incidents," that on one occasion she used a butcher knife in a verbal altercation, and that her conduct endangered T.R.'s physical health and safety and placed him at risk of serious physical harm, damage, and danger.  The court also found Mother had mental and emotional challenges that rendered her incapable of providing regular care for T.R.  The court declared T.R. a dependent child of the juvenile court and removed him from his parents.

B.    *The Department and Juvenile Court's ICWA-related Actions*

At the time the Department filed the petition on behalf of T.R., it attached the required ICWA-010(A) form indicating inquiry had been made and T.R. had no known Indian ancestry. In the detention report, the Department indicated ICWA may not

3

or does not apply because Mother and Father confirmed neither had any Indian ancestry.

At the initial hearing, Father advised the court he did not have any Indian ancestry and he had no reason to know Mother did. Mother did not appear at the initial hearing. Based on Father's statements, the court found it did not have reason to know T.R. was an Indian child at that time. It ordered the Department to continue interviewing all appropriate relatives regarding Indian ancestry.

Although Mother appeared at subsequent hearings, the court did not inquire about her or T.R.'s possible Indian ancestry. The Department did not conduct an ICWA inquiry when it interviewed Mother, her relatives, or Father's relatives. In its jurisdiction report, the Department detailed its interviews with Mother, maternal aunt M.G., a maternal great-aunt, and the paternal grandmother. The report did not disclose any ICWA inquiry during these interviews.[2] The Department also contacted the maternal grandmother and mother's cousin, Nicole, and was provided phone numbers for two other unnamed maternal relatives. There is no indication the Department asked these maternal relatives whether T.R. had any Indian ancestry. The jurisdiction report noted only that "[o]n November 8, 2022, the Court found that the Indian Child Welfare Act does not apply."

---

[2] California Rules of Court, rule 5.481(a)(5) requires: "The petitioner must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status."

All further rule references are to the California Rules of Court.

4

C.     *Post-appeal Proceedings*

On May 8, 2023, Mother filed a notice of appeal from the juvenile court's jurisdiction findings and disposition order.  On January 10, 2024, at the permanency and planning hearing under section 366.26, the juvenile court selected legal guardianship as the permanent plan.  The court found:  "The child is living with a relative who is unable or unwilling to adopt the child because of circumstances that do not include an unwillingness to accept legal or financial responsibility for the child but who is willing and capable of providing a stable and permanent environment through legal guardianship, and the removal of the child from the legal guardian would be detrimental to the emotional well-being of the child."  The court appointed Eddie Lee as T.R.'s guardian and terminated its dependency jurisdiction.[3]  Mother did not appeal from the juvenile court's January 10, 2024 orders.

The Department moved to dismiss Mother's appeal.  The Department argued that, because there was no appeal from the January 10, 2024 orders and the time to do so had expired, this court cannot provide Mother any effective relief and the appeal is moot.  Mother opposed, arguing that "a finding of mootness does not end the analysis" and that this court "should exercise its discretionary authority and hear this appeal."  Mother argues that whether the juvenile court and the Department complied with their obligation under ICWA is "'an issue of broad public

---

[3]     The Department filed a motion to take judicial notice of the January 10, 2024 minute order selecting guardianship as the permanent plan.  The motion to take judicial notice is granted. (See Evid. Code §§ 452, 459; *In re Kenneth D.* (2024) 16 Cal.5th 1087, 1106.)

5

interest [and importance] that is likely to recur,'" and "'a material question [that] remains for the court's determination.'" (*In re D.P.* (2023) 14 Cal.5th 266, 282.) Mother argues the purpose of ICWA is to "keep[] children connected to Indian families" in light of the history of removal of Indian children from their families. (See *In re S.S.* (2023) 90 Cal.App.5th 694, 705.)

We invited the parties to submit letter briefs addressing whether if we were to exercise our discretion to consider Mother's appeal and order a remand for the juvenile court to comply with the inquiry and notice provisions under ICWA and Cal-ICWA, the juvenile court would have jurisdiction to remedy these violations since it had selected legal guardianship and retained jurisdiction over T.R. as a ward of the legal guardianship. (See §§ 366.3, subd. (a)(3), 366.4, subd. (a).)

The Department argued the juvenile court's power to conduct further proceedings under these circumstances is generally limited to resolving issues related to the guardianship and not to ICWA compliance. It acknowledged, however, the juvenile court would be able to comply with this court's direction on remand, given the juvenile court's ongoing jurisdiction over T.R. as a ward of the legal guardianship. Mother agreed the juvenile court has jurisdiction to remedy the ICWA violations, citing the statutes addressing jurisdiction under legal guardianships.

6

## DISCUSSION

A. *Mother's Appeal is Not Moot*

　　1.　*Mootness in Dependency Proceedings*

An appeal "becomes moot when events "'render[ ] it impossible for [a] court, if it should decide the case in favor of [the appellant], to grant him any effect[ive] relief.""" (*In re D.P., supra,* 14 Cal.5th at p. 276; accord, *In re Gael C.* (2023) 96 Cal.App.5th 220, 264.) "For relief to be 'effective,' two requirements must be met. First, the plaintiff must complain of an ongoing harm. Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks." (*In re D.P.*, at p. 276.) Mother satisfied the first requirement: she complains of the Department's and the court's failure to fulfill their duty of inquiry under ICWA. We slightly reframe the second requirement and examine whether the juvenile court has jurisdiction to redress or rectify any ICWA violations if we find reversible error.

　　"As a general rule, an order terminating juvenile court jurisdiction renders an appeal from a previous order in the dependency proceedings moot. [Citation.] However, dismissal for mootness in such circumstances is not automatic, but 'must be decided on a case-by-case basis.'" (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1488; accord, *In re Rashad D.* (2021) 63 Cal.App.5th 156, 163; see also § 304 [juvenile court has exclusive jurisdiction to hear proceedings regarding custody or guardianship "until the time that the petition is dismissed or dependency is terminated"]; rule 5.620(a) [same].)

　　In *In re Rashad D.,* the mother challenged the custody rulings arising from the juvenile court's jurisdiction findings and

7

disposition orders.  She did not appeal from the later orders terminating jurisdiction and awarding sole physical custody to the mother and joint legal custody to the mother and the father. (See *In re Rashad D., supra,* 63 Cal.App.5th at p. 162.)  *In re Rashad D.* held, "an appeal from the orders terminating jurisdiction and awarding custody is necessary for this court to be able to provide effective relief." (*Id.* at p. 164.)  Unless the appellate court reversed those later orders, the juvenile court had "no jurisdiction to conduct further hearings in the now-closed case." (*Ibid.*)  Because the mother "did not appeal those orders, they are not . . . subject to appellate review.  And because the juvenile court terminated its jurisdiction . . . and that termination is final, a remand for further proceedings in the juvenile court would be meaningless." (*Id.* at pp. 164-165; accord, *In re Gael C., supra,* 96 Cal.App.5th at p. 225.)

2. *Jurisdiction Under Legal Guardianship*

When a juvenile court orders a permanent plan of legal guardianship, the court retains dependency jurisdiction over the child until the guardianship is established.  (See § 366.3, subd. (a)(1).)  "Following establishment of a legal guardianship, the court may continue jurisdiction over the child as a dependent child of the juvenile court or may terminate its dependency jurisdiction and retain jurisdiction over the child as a ward of the legal guardianship, as authorized by Section 366.4." (§ 366.3, subd. (a)(3); see also rule 5.740(a)(4).)  Section 366.4, subdivision (a), states in relevant part: "Any minor for whom a guardianship has been established resulting from the selection or implementation of a permanency plan pursuant to Section 366.26 . . . is within the jurisdiction of the juvenile

8

court. . . . If no specific provision of this code or the California Rules of Court is applicable, . . . [certain sections of] the Probate Code govern so far as they are applicable to like situations." By this language, section 366.4 confers jurisdiction on the juvenile court over the minor even after a dependency termination order. (See *In re Priscilla D.* (2015) 234 Cal.App.4th 1207, 1216; *In re Heraclio A.* (1996) 42 Cal.App.4th 569, 575.)

Relatedly, rule 5.481(a) imposes on the juvenile court and the Department "an affirmative and continuing duty to inquire whether a child is or may be an Indian child in all proceedings identified in rule 5.480." Rule 5.480 provides in relevant part: "This chapter addressing the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) as codified in various sections of the Family Code, Probate Code, and Welfare and Institutions Code, applies to most proceedings involving Indian children that may result in . . . guardianship" and expressly includes "(1) Proceedings under Welfare and Institutions Code section 300 et seq."

3.  *Analysis*

Under the plain language of section 366.4, subdivision (a), T.R. remains "within the jurisdiction of the juvenile court" as a ward of the legal guardianship, notwithstanding the court's order terminating dependency jurisdiction. As such, the juvenile court has a duty to ensure compliance with ICWA. (See §§ 224.1, 224.2, 224.3; see also rule 5.481.) And as a result, the error Mother raises in her appeal—the failure of the Department and the juvenile court to comply with their duty of inquiry under ICWA in prepermanency proceedings—is redressable or capable of being rectified by remanding for further proceedings. In other words, Mother's appeal is not moot because we may grant her

9

effective relief since the juvenile court retains jurisdiction over T.R. as a ward of the legal guardianship, which includes the authority to order compliance with ICWA.

We are not persuaded by the Department's arguments that: (1) Mother's failure to appeal from the dependency termination order means we cannot grant her effective relief; (2) even if the juvenile court has ongoing jurisdiction, that jurisdiction is limited to hearing petitions regarding the guardianship rather than ensuring compliance with ICWA; and (3) ICWA does not apply in post-permanency hearings.

First, the Department argues that *In re Rashad D., supra,* 63 Cal.App.5th at pages 164 to 165, supports its argument that the failure to appeal from the dependency termination order means we cannot grant effective relief. But that case did not address a situation like the one before us involving a legal guardianship where the juvenile court retains jurisdiction over the minor. The juvenile court's dependency termination order in that case was final, and the court lacked jurisdiction to conduct further hearings, rendering any remand meaningless. (*Ibid.* [case was moot because the juvenile court lacked "jurisdiction to conduct further hearings in [a] now-closed case"].) That is not the case here because, despite the termination of dependency jurisdiction, the juvenile court retains jurisdiction over the legal guardianship and it has authority to conduct further proceedings in the case. (See §§ 366.3, 366.4.)

Second, the Department argues "the juvenile court's power to conduct further proceedings after termination of [dependency] jurisdiction with a legal guardianship has heretofore been exercised in limited circumstances:  mainly to hear section 388 petitions seeking modification of the terms of the legal

10

guardianship, termination of the legal guardianship, reunification services for a parent that could lead to termination of the legal guardianship, or where the legal guardian has died and a new permanent plan is necessary."

But nothing in the plain language of the statutory provisions at issue supports the Department's limited view of the juvenile court's authority. The juvenile court's ongoing jurisdiction under section 366.4 is not expressly limited to petitions involving the guardianship, nor does the statutory provision prevent the juvenile court from directing compliance with ICWA's mandates. And even if, as the Department suggests, section 366.3, subdivisions (b) and (c), can be read to limit the conditions under which the court may reinstate dependency jurisdiction, that still falls short of an express limitation on the proceedings the court may conduct under section 366.4. We need not decide whether, in order to comply with ICWA mandates at the jurisdiction and disposition hearing, the juvenile court must reinstate dependency jurisdiction or whether it can direct such compliance as part of its ongoing jurisdiction in the legal guardianship. We only note that the court's authority is not as limited as the Department argues.

Third, the Department asserts ICWA "does not always apply" during post-permanency proceedings, citing *In re N.F.* (2023) 95 Cal.App.5th 170. But the ICWA violations that Mother raises in this appeal all occurred during prepermanency proceedings (i.e., at the jurisdiction and disposition stage). For that reason, *In re N.F.* does not answer the question before us.

In that case, the child was removed from the mother's custody. At the detention hearing, the mother confirmed she did not have Indian ancestry. (See *In re N.F., supra,* 95 Cal.App.5th

11

at pp. 174-175.)  The mother also told the court that the father had died, and she had no reason to know he had Indian ancestry. Based on the mother's statements, the court found it had no reason to know the child was an Indian child, and ICWA therefore did not apply.  The mother failed to reunify with the child and the juvenile court selected legal guardianship as the permanent plan, appointing an uncle as legal guardian.  (*Ibid.*)

Almost a year later, mother filed a section 388 post-permanency petition seeking reinstatement of reunification services and the "'cha[nc]e to live together [with N.F.],'" which the court denied.  (*In re N.F., supra,* 95 Cal.App.5th at p. 175.) The mother appealed from that order, seeking to reverse the court's legal guardianship order on the ground the court and the Department failed to comply with their duty of inquiry under ICWA.  (*Ibid.*)

The Court of Appeal held ICWA did not apply to the post-permanency hearing because "it was not an Indian child custody proceeding," which is defined as one that may culminate in "foster care placement—including guardianship placement—termination of parental rights, preadoptive placement, or adoptive placement."  (*In re N.F., supra,* 95 Cal.App.5th at p. 180.)  The legal guardianship was established at the section 366.26 hearing, not at the post-permanency hearing from which mother appealed.  (*Id.* at p. 178.)  Moreover, the mother was seeking to have N.F. returned to her care, and ICWA did not apply when parents seek return of a child to their own care.  (*Id.* at p. 180.)

Unlike the mother in *In re N.F.*, Mother here does not appeal from a post-permanency hearing order.  Nor does she contend the Department or the juvenile court had a duty of

inquiry under ICWA at that stage of the proceedings. She instead appealed from the jurisdiction findings and disposition order, challenging the court's ICWA finding. *In re N.F.*'s holding that an ICWA inquiry was not required in post-permanency proceedings does not apply.

In sum, Mother's appeal is not moot because we can grant her relief by remanding to the juvenile court for ICWA compliance, which retains jurisdiction due to the legal guardianship.

B.  *The Department and the Juvenile Court Failed To Comply with Their Duties Under ICWA*

Having determined Mother's appeal is not moot, we now consider it on the merits. In a letter filed in lieu of a respondent's brief, the Department agrees to a remand for ICWA compliance if its motion to dismiss is denied. The Department concedes it failed to properly investigate whether T.R. is or may be an Indian child. We agree.

1.  *ICWA and the Duties of Inquiry and Notice*

The California Supreme Court recently addressed "whether a child welfare agency's failure to make the statutorily required initial inquiry under California's heightened ICWA requirements constitutes reversible error." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125.) It "conclude[d] a judgment must be conditionally reversed when error results in an inadequate ICWA inquiry." (*In re Kenneth D.* (2024) 16 Cal.5th 1087, 1094; see *In re Dezi C.,* at p. 1125.)

"ICWA establishes minimum standards for state courts to follow before removing Indian children from their families and

13

placing them in foster care or adoptive homes and does not prohibit states from establishing higher standards." (*In re Dezi C., supra,* 16 Cal.5th at p. 1129; see 25 U.S.C. §§ 1902, 1921; *In re Y.W.* (2021) 70 Cal.App.5th 542, 551; *In re T.G.* (2020) 58 Cal.App.5th 275, 287.) "[W]hen ICWA applies, 'the Indian child's tribe shall have a right to intervene at any point' in a proceeding involving the removal of an Indian child from their family." (*In re Dezi C.,* at p. 1129; see also 25 U.S.C. § 1911(c); *In re Isaiah W.* (2016) 1 Cal.5th 1, 8.)

To ensure tribes have the opportunity to exercise their rights in dependency proceedings, an investigation of a family member's belief a child may have Indian ancestry must be undertaken and notice provided, where appropriate, to the relevant tribes. (See § 224.2, subd. (a) [imposing on the court and child protective services agencies "an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child"].)

The duty to inquire "'begins with initial contact (§ 224.2, subd. (a)) and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child.'" (*In re Rylei S.* (2022) 81 Cal.App.5th 309, 316; see § 224.2, subds. (a)-(c).) The duty of inquiry also extends to the juvenile court, which is required to "ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c); see also 25 C.F.R. § 23.107(a) ["[s]tate courts must ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child"].)

14

The Department's duty of "[i]nquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child."  (§ 224.2, subd. (b); see rule 5.481(a)(1) [the Department "must ask the child, if the child is old enough, and the parents, Indian custodian, or legal guardians, extended family members, others who have an interest in the child, and where applicable the party reporting child abuse or neglect, whether the child is or may be an Indian child"]; *In re Y.W., supra*, 70 Cal.App.5th at pp. 551-552.)

ICWA and Cal-ICWA define "extended family member," if not separately defined by the law or custom of the Indian child's tribe, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent."  (25 U.S.C. § 1903(2); see § 224.1, subd. (c) [providing "extended family member" follows definition stated in ICWA].)

The duty of further inquiry is triggered if the juvenile court or the Department "has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child."  (§ 224.2, subd. (e); rule 5.481(a)(4); *In re Y.W., supra*, 70 Cal.App.5th at p. 552.)  That further inquiry requires interviewing, "as soon as practicable," extended family members, contacting the Bureau of Indian Affairs and contacting "the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership,

citizenship status, or eligibility." (§ 224.2, subd. (e) & (e)(2)(C));
see also rule 5.481(a)(4).)

If the further inquiry "results in a reason to know the child
is an Indian child, then the formal notice requirements of
section 224.3 apply." (*In re D.S.* (2020) 46 Cal.App.5th 1041,
1052; see 25 U.S.C. § 1912(a); § 224.3, subd. (a) [notice under
ICWA "shall be provided" if the court, social worker, or probation
officer "knows or has reason to know . . . that an Indian child is
involved"].)

"'The duty to develop information concerning whether a
child is an Indian child rests with the court and the Department,
not the parents or members of the parents' families.'" (*In re
Rylei S., supra,* 81 Cal.App.5th at p. 317; accord, *In re Dezi C.,
supra,* 16 Cal.5th at pp. 1131-1132.)

"[E]rror resulting in an inadequate initial Cal-ICWA
inquiry requires conditional reversal with directions for the child
welfare agency to comply with the inquiry requirement of
section 224.2, document its inquiry in compliance with
rule 5.481(a)(5), and when necessary, comply with the notice
provision of section 224.3. When a Cal-ICWA inquiry is
inadequate, it is impossible to ascertain whether the agency's
error is prejudicial. [Citations.] '[U]ntil an agency conducts a
proper initial inquiry and makes that information known, it is
impossible to know what the inquiry might reveal.'" (*In re
Dezi C., supra,* 16 Cal.5th at p. 1136.)

2. *Analysis*

As stated, the Department concedes its ICWA inquiry was
insufficient. We agree.

16

The Department had a duty pursuant to section 224.2, subdivision (b), to ask not only the parents, but also extended family members whether T.R. had possible Indian ancestry. Both maternal and paternal family members were identified or interviewed during the course of these proceedings. The Department's jurisdiction report confirms it contacted and interviewed a maternal aunt, a maternal great aunt, the maternal grandmother, mother's cousin, and the paternal grandmother. The Department was required to, but did not, report that any ICWA inquiry was made during those interviews. There is no dispute that an ICWA inquiry was not made in those interviews.

Additionally, the juvenile court failed to ask Mother about T.R.'s possible Indian ancestry at any hearing and it failed to ensure the Department had complied with its statutory obligations before finding ICWA did not apply. The Department and the court did not fully comply with ICWA. (See *In re Dezi C., supra,* 16 Cal.5th at p. 1141 [inquiry "falls well short" of ICWA requirements where it extended no further than mother and father even though their parents, siblings, and father's cousin were readily available and had been interviewed].)

We conditionally affirm and remand to the juvenile court for ICWA compliance. On remand, "the Department will make additional inquiry and documentation efforts consistent with its duties and the court shall hold a hearing thereafter to determine whether, in light of the outcome of the inquiry as documented, ICWA applies. If the juvenile court determines the inquiry is proper, adequate, and duly diligent and concludes that ICWA does not apply, any inquiry error is cured, and the [court's original orders will remain in effect]. [Citation.] In contrast, if

the inquiry reveals a reason to know the dependent child is an Indian child, the tribe has been notified (see § 224.3, subd. (a); 19 U.S.C. § 1912), and the tribe determines the child is a member or citizen, or eligible for membership or citizenship, of an Indian tribe (see § 224.1, subd. (b); 25 U.S.C. § 1903(4)), ICWA applies, and the judgment must be reversed." (*In re Dezi C., supra,* 16 Cal.5th at pp. 1137-1138.)

## DISPOSITION

The motion to dismiss the appeal is denied. The juvenile court's jurisdiction findings and disposition order are conditionally affirmed. We remand to the juvenile court for full compliance with the inquiry and notice provisions of ICWA and Cal-ICWA as stated herein.

MARTINEZ, P. J.

We concur:

SEGAL, J.                          FEUER, J.

18