Filed 1/11/21  In re A.E. CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.E., a Person Coming Under the Juvenile Court Law. | |
| TUOLUMNE COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> SAMANTHA A. et al., <br><br> Defendants and Appellants. | F081534 <br><br> (Super. Ct. No. JV8086) <br><br><br> **OPINION** |

### THE COURT[*]

APPEALS from an order of the Superior Court of Tuolumne County.  Donald I. Segerstrom, Jr., Judge.

Julie E. Braden, under appointment by the Court of Appeal, for Defendant and Appellant Samantha A.

Amy Z. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant Jared F.

---

[*]    Before Franson, Acting P.J., Peña, J. and Smith, J.

Sarah Carrillo, County Counsel, and Maria Sullivan, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

Jared F. (father)[1] appeals from a Welfare and Institutions Code section 366.26[2] order terminating his parental rights to daughter A. Father contends he received ineffective assistance of counsel because counsel failed to file a section 388 petition to seek reunification services prior to the section 366.26 hearing or to request a continuation at the hearing in order to do so. Samantha A. (mother) does not raise any issues on her own but joins in the argument raised by father.

We affirm.

## SUMMARY OF FACTS AND PROCEDURE

In September of 2019, the social services agency[3] received a referral that both mother and A. tested positive for methamphetamine at A.'s birth. Mother, who admitted methamphetamine use every other day throughout her pregnancy, was non-responsive to A.'s signs of hunger, giving her a pacifier instead of feeding her.

Mother had an open child dependency case involving three older children, who were placed with maternal grandmother and stepgrandfather. Mother claimed reunification services in that case had just been extended and she had just recently re-engaged in services. She had enrolled in a drug treatment program in June of 2019 but stayed only four days before leaving.

---

[1]    At times referred to as Jared E.

[2]    All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[3]    Two social service agencies were involved in this case. The case began with Calaveras Health and Human Services Agency, but it was with the Tuolumne County Department of Social Services by the time of the detention hearing.

Mother reported that father was A.'s father, but she had broken up with him four months earlier, although he came to the hospital at her request to sign the paternity declaration. When contacted, father stated he was "living between friends" and had a past criminal history of drug sales. He recently completed a rehabilitation program, as well as drug court approximately eight months earlier. He claimed not to be aware of mother's drug use but knew of her ongoing dependency case. Father wished to participate in reunification services for A., who was placed in protective custody with maternal grandmother and her half siblings.

*Detention*

A section 300 petition was filed alleging A. was at risk of harm due to mother's continued substance abuse and her open dependency case.

At the detention hearing September 26, 2019, father did not appear, although he received notice. Father had told the social worker he was going to work rather than the hearing. The hearing was continued to October 1, 2019. Father again failed to appear on October 1, 2019, and after failing to appear at the continued hearing October 3, 2019, A. was ordered detained and jurisdiction set for October 22, 2019.

*Jurisdiction*

The report prepared for jurisdiction stated that mother's previous case began a year earlier in August of 2018, with a petition alleging mother's methamphetamine abuse and the unsafe and unsanitary condition of her home, which resulted in an injury to one of the children. While mother was first provided family maintenance services at maternal grandmother's home, mother left the home in January of 2019 and her whereabouts were unknown. The children were then removed from mother's care and placed with maternal grandmother. Mother was granted reunification services, but at this point, a contested hearing was pending on the issue of additional services.

Father, who had continuous arrests and convictions for substance use and sales crimes since 2013, was arrested on October 14, 2019, for possession and transporting narcotics and controlled substances for sale.

The social worker visited father in jail. Father reported that he had seen A. twice since her birth and he did not want her visiting him while in jail. The social worker attempted to discuss services with father, but he stated there was nothing the agency could offer that would help. Father became upset when the social worker declined to give him mother's phone number, claiming mother was the only one who would help him "get his money." When the social worker offered to relay a message to mother, father stated he did not have to work with the agency and refused to talk to the social worker further.

Mother failed to make herself available to the social worker and she was not participating in her case plan for her older children. While she had been spending nights in an apartment owned by her parents, she was not allowed further use of the apartment after her recent drug use.

Both mother and father appeared at the October 22, 2019, jurisdiction hearing, and both submitted on the petition. The juvenile court found the petition true and referred mother to drug court. Disposition was set for November 12, 2019.

*Disposition*

The original report prepared for disposition recommended services be offered both mother and father through drug court.

Father was released on bail at the end of October 2019 and met with the social worker. Father brought his cousin, a social worker from another county, with him. He admitted being an addict, he had completed drug court the prior year, and requested a referral to drug court again and to begin services, including visitation, as soon as possible. Father tested negative for substances. An intake appointment for drug court was immediately requested for father.

4.

In his interview, father reported that he had three older children, between the ages of eight and 16, and, although he had used marijuana and methamphetamine since teenage years, blamed his methamphetamine "issue" on the mother of his eight-year-old child, because she had not allowed him contact with that child for the past seven years. Father did not keep contact with A.'s mother as he did not think she was "doing anything for" A. at this time. But he insisted he wanted to be a father to A. and would never keep her from her mother the way the mother of his other child had kept that child from him.

Father claimed he fell back into methamphetamine use two months previous due to a lack of housing. His charges from the October arrest were still pending. He had visited A. twice since getting out of jail and agreed A. should not be placed with him at this point as he was newly sober and had pending criminal charges.

Mother did not make herself available for an interview. She had been visiting regularly at maternal grandmother's home, but visits had recently become inconsistent.

Neither mother nor father appeared at the November 12, 2019, disposition hearing. Maternal grandmother was present and indicated to the social worker that mother was in Texas for a week. Counsel for father stated he had spoken to father while he was in custody and he knew of this day's hearing, but he had not had any recent contact with him. The matter was continued to November 26, 2019.

The agency submitted an addendum report, this time recommending that services be denied both mother and father pursuant to section 361.5, subdivision (b)(13)[4], and that the matter be set for a section 366.26 hearing. The addendum report stated that probation had encountered father and his girlfriend on November 13, 2019, and the girlfriend was in possession of a large amount of methamphetamine and heroin. Father acknowledged knowing that the girlfriend had the drugs while in his vehicle.

---

[4] Reunification services need not be provided a parent if the parent has had a history of extensive, abusive, and chronic drug use and resisted prior court-ordered treatment within a particular time period.

It was also learned that father had tested positive for methamphetamine and morphine (indicative of heroin use) on November 8, 2019. Father denied use of both drugs, but "believed" he could have gotten them into his system by touching his old belongings. Father had tested negative five other times during October and November 2019. When told by the social worker of the change in recommendation of services and that he would need to engage in substance abuse services to demonstrate his motivation to reunify, father became upset and hung up the phone.

Mother did not return to town on November 20, 2019, as she had previously said she would, and failed to respond to the social worker's phone calls and text messages. She had been terminated from a substance abuse program on November 12, 2019, for non-participation. She had not participated in drug court services or any testing.

The agency report explained that the agency believed father had had a brief relapse and was willing to offer services, but when he tested positive on November 8, 2019, and soon thereafter was found driving his girlfriend in his vehicle knowing she was in possession of a large amount of drugs, the agency became convinced that father was still participating in a "substance abusing lifestyle despite being out on bail for pending substance abuse sales charges."

The disposition hearing was continued several more times and eventually a contested hearing held on January 3, 2020. Mother did not appear. Father appeared but called only the social worker, who testified that father had been set up for a substance abuse intake, at father's request, for November 13, 2019, but that he failed to attend. The social worker testified that father had attended visits and changed A.'s diapers and fed her, but it appeared as if he was a "new dad type." Father had not asked the social worker about A.'s well-being either when he was in jail or more recently when the social worker was in contact with him prior to the jurisdiction hearing.

The juvenile court declared A. a dependent and denied both mother and father services pursuant to section 361.5, subdivision (b)(13), due to past and continued drug

use.  Supervised visits were set for once a month.  A section 366.26 hearing was set for April 21, 2020.

*Section 366.26 Hearing*

The report prepared for the section 366.26 hearing recommended termination of parental rights and adoption as the permanent plan.  A. had been placed since birth with maternal grandmother and stepgrandfather and her three half siblings.  Maternal grandparents wished to adopt A. and were not interested in guardianship.

Mother had not visited initially during the reporting period, avoiding the social worker and declining to drug test and visitation was suspended.  Mother did see A. at the church where she and maternal grandmother attended, but church services were suspended due to COVID-19 and mother had visited only once at maternal grandmother's home at the end of March 2020.

Father visited sporadically.  When he did participate, he was appropriate and loving.  Maternal grandmother allowed telephone visits after COVID-19 restrictions went into place.

A. was described as a happy baby who was developmentally on track and bonded with maternal grandmother and stepgrandfather.

Both mother and father appeared at the April 21, 2020 hearing and requested a contested hearing, which was set for May 22, 2020.

On May 20, 2020, father filed a letter he had written, with an attached probation report from his criminal matter.  In the letter he wrote he was "officially" contesting the recommendation to terminate his parental rights.  He also disagreed with the characterization of his visits as "sporadic," stating he had only missed two visits in the previous six months and attended several church services to see A. when maternal grandmother brought her there.  Father acknowledged his drug relapse, stating it had occurred on October 1, 2019, but he had been clean since.  In the letter, father wrote that he was "currently" participating in a parenting class.

7.

The attached probation report described the circumstances of October 14, 2019, when father was arrested with his girlfriend and a third individual. The probation officer noted that father did not believe he needed further substance abuse counseling but was willing to do so if ordered to. The probation officer rated father as being in the "moderate" risk category for re-offense. The probation officer recommended five years of probation with six months in county jail, followed by drug treatment, if so directed.

Both mother and father appeared at the May 22, 2020 hearing. Father's counsel submitted two additional documents, letters from the parenting class provider indicating that father began parenting classes on April 30, 2020, and mother began parenting classes as of May 20, 2020.

Father's counsel called father to testify. When asked when A.'s birthday was, father was not sure what date it was in September. According to father, his criminal case had been resolved as he pled guilty to "running and maintaining a drug house and transportation of heroin." He now had to do three months' time with 15 days of credit.

Father testified he had been sober for about six months, back to December of 2020. He was attending some NA/AA meetings through Zoom and had also begun attending parenting classes through Zoom three weeks ago. Father testified that he had had a sponsor for "maybe a little over a month."

Since the disposition hearing, father had had two visits, one was via video due to COVID-19. Father had seen A. at church maybe five or six times since she was born.

On cross-examination, father was asked if he was dating mother again. He denied they were dating, but they had been together recently, and he had helped her enroll in the parenting classes and doing the Zoom meetings together. All of father's visits with A. had been supervised.

Father testified that he had been on probation in the county for six years. He claimed not to know if he could be sent to prison if he violated probation. He was set to enter custody to serve his sentence on June 22, 2020.

8.

When asked what step in AA/NA he was on at this point, father said step 4, which he described as "making amends, or making a list of amends or something," which he had been working on "[a] little while."

Mother testified that she last used methamphetamine in April of 2020, using once a week. She claimed it was no longer a problem because she stopped using within the past month and began using tools she had been "gathering along [the] way."

In closing, father's counsel argued that father has "progressed and he is trying to become a father," to which the juvenile court replied, "Then why didn't he file a 388 and ask for services?" Counsel replied, "Understood, your Honor. He didn't."

In its ruling the juvenile court noted that mother and father had been arguing for guardianship, but that this was not a hearing to determine whether the parents should be offered services in order to reunify with A. Instead, the juvenile court found that A. was adoptable, and the maternal grandmother wished to adopt her. The juvenile court found that it could not make a finding that continuing a relationship with mother or father would be more beneficial than providing permanency and stability through adoption and terminated parental rights.

## DISCUSSION

### I.    CLAIMED INEFFECTIVE ASSISTANCE OF COUNSEL

Father contends he was denied effective assistance of counsel because his counsel "failed" to file a section 388 petition showing a change of circumstances that would trigger reunification services. To prevail on the claim, father must show that counsel's representation fell below an objective standard of reasonableness resulting in prejudice, i.e., had a section 388 petition been filed, it is reasonably probable that it would have been granted. (*In re Jackson W.* (2010) 184 Cal.App.4th 247, 261; *In re Emilye A.* (1992) 9 Cal.App.4th 1695, 1711.)

A section 388 petition must show a change of circumstances and that modification of the prior order would be in the best interests of the minor child. (*In re Casey D.*

9.

(1999) 70 Cal.App.4th 38, 47; *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 526.)  To support a section 388 petition, the change in circumstances must be substantial.  (*In re Heraclio* (1996) 42 Cal.App.4th 569, 577.)  Father's recent sobriety reflects "changing," not changed, circumstances.  (See e.g., *In re Casey D., supra,* at p. 49.)  Father has a history of drug use relapses, is in the early stages of recovery, and is still addressing a chronic substance abuse problem.  (See *In re Kimberly F., supra,* at p. 531, fn. 9 [" 'It is the nature of addiction that one must be "clean" for a much longer period than 120 days to show real reform.' "]; *In re Clifton B.* (2000) 81 Cal.App.4th 415, 423–424 [200 days of sobriety not enough].)  Although father claimed sobriety for about six months, he had not currently attended or completed a drug treatment program, but was attending weekly AA/NA meetings, had only recently gotten a sponsor, and was just in the beginning stages of the 12-step program.  Though commendable, this is not a substantial change of circumstances.

Even if there were a change in circumstances, father does not explain how reunification services would be in A.'s best interests.  A. has been in the care of maternal grandmother since birth and is bonded to her.  Maternal grandmother provided a nurturing environment and is committed to adopting her.  Father, on the other hand, was on probation and still had to complete three months jail time during which he did not wish to visit with A., and he had not had enough contact with A. to bond with her.  Granting a section 388 petition would delay selection of a permanent home and not serve the child's best interests.  (*In re Casey D., supra,* 70 Cal.App.4th at p. 47.)  "Childhood does not wait for the parent to become adequate."  (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310.)

The factors to be considered in evaluating the child's best interests under section 388 are: (1) the seriousness of the problem that led to the dependency and the reason for any continuation of that problem; (2) the strength of the child's bond with his or her new caretakers compared with the strength of the child's bond with the parent, and (3) the

degree to which the problem leading to the dependency may be easily removed or ameliorated, and the degree to which it actually has been. (*In re Kimberly F., supra,* 56 Cal.App.4th at pp. 531–532.) None of these factors favor the granting of a 388 petition in father's case.

Citing *In re Eileen A.* (2000) 84 Cal.App.4th 1248 (disapproved on another ground by *In re Zeth S.* (2003) 31 Cal.4th 396, 413–414), father contends he had nothing to lose and "had no place to go but up by filing a section 388 modification petition." But this can be said of any similar case. Crediting father's theory would give judicial imprimatur to the filing of unmeritorious section 388 petitions. (*In re Edward H.* (1996) 43 Cal.App.4th 584, 593.)

*Eileen A.* is factually distinguishable. There, reunification services were bypassed after the father severely physically abused the child. Mother did not appreciate the significance of the child's injuries or take the child to a doctor. (*In re Eileen A., supra,* 84 Cal.App.4th at p. 1252.) The court concluded that mother was denied effective assistance of counsel because her attorney did not file a section 388 petition for services, which in the words of the court would have been "a clear winner." (*Eileen A., supra,* at p. 1262.) Before the section 366.26 hearing, the mother divorced father and "initiated what was, in effect, her own reunification plan, including counseling, parenting classes, Al–Anon, and steps to keep [the father] out of her life. [The Father]—the actual perpetrator of the original abuse—left the picture completely. There clearly was a change of circumstances ...." (*Eileen A., supra,* at p. 1260.) The court acknowledged that the case would be different if the mother "were the perpetrator of the abuse .... [T]he 'problem' from [the mother's] point of view—was one of omission and ignorance. [It is] not in the same category as drug abuse, crime, or being the 'offending parent' ...." (*Id.* at p. 1261.)

Here, a section 388 petition would not be a "clear winner." There is no parental "omission" and "ignorance." Father is a chronic drug abuser who chose drugs and a

11.

criminal lifestyle over A. He learned nothing from previous substance abuse treatment and jail time and probation except that he was placed on notice that he could lose custody of A. if he did not make necessary changes. This warning went unheeded. During the dependency, father violated probation and used and transported drugs. While father may have loved A., there was nevertheless no evidence that A. had bonded with father or that the parent-child relationship outweighed the benefits of adoption.

In *Eileen A.*, as here, the agency recommended father not be granted reunification services based on his past drug use and reluctance to follow through on drug treatment. Unlike *Eileen A.*, this is a case where the problems leading to the dependency cannot be easily removed or ameliorated. (See *In re Kimberly F., supra,* 56 Cal.App.4th at p. 532.) Chronic drug abuse presents a lifelong challenge and may put children of such drug abusers in danger. Father has not shown that trial counsel's representation fell below an objective standard of reasonableness and that not filing a section 388 petition prejudiced him. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) "Defense counsel is not required to make futile motions or to indulge in idle acts to appear competent. [Citations.]" (*People v. Torrez* (1995) 31 Cal.App.4th 1084, 1091–1092; see also *People v. Weaver* (2001) 26 Cal.4th 876, 931.) Nor can father show that a section 388 petition for services would have resulted in a more favorable outcome.

Finally, we observe that a section 388 order for reunification services at this late date would deprive A. of a permanent, stable home in exchange for an uncertain future. (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081.) "Children should not be required to wait until their parents grow up." (*In re Rikki D.* (1991) 227 Cal.App.3d 1624, 1632, disapproved on other ground in *In re Jesusa V.* (2004) 32 Cal.4th 588, 624, fn. 12.)

## DISPOSITION

The section 366.26 order terminating parental rights is affirmed.