Filed 2/18/21  In re S.S. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re S.S. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E075618 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J282333 & J282334) |
| v. | OPINION |
| K.W. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County. Erin K. Alexander, Judge. Affirmed.

Lauren K. Johnson, under appointment by the Court of Appeal, for Appellant and Defendant, K.W.

Christopher R. Booth, under appointment by the Court of Appeal, for Appellant and Defendant, C.S.

1

Michelle D. Blakemore, County Counsel and Dawn M. Martin, Deputy County Counsel for Plaintiff and Respondent.

Mother and father appeal orders which led to the termination of their parental rights over their daughter and son, now aged four and two years, after they were removed due to neglect. Mother had lost custody of her children before, including the older child in this case, due to substance abuse. Three months after she completed her case plan and regained custody, the younger child's father reported mother had relapsed and had left the children alone with a nonrelative felon. Both parents lost custody again and the court denied reunification services.

Mother argues the trial court erred when it determined (i) she didn't establish a change of circumstances to justify giving her reunification services (Welf. & Inst. Code, § 388, unlabeled statutory citations refer to this code) and (ii) the parent-child relationship didn't outweigh the benefits of adoption. (§ 366.26, subd. (c)(1)(B)(i).) The boy's father adopts mother's grounds for appeal, though a finding mother had changed circumstances warranting reunification services for her or had a special relationship with the children warranting reversal of termination of her rights would not affect father's rights.

We affirm as within its discretion the trial court's denial of mother's section 388 petition and its determination the parent-child relationship exception does not apply.

2

# I

# FACTS

A. *The Abuse and Detention*

When this case began, mother had already been embroiled in the juvenile dependency system for years. In 2017, she lost her parental rights to an older son who had been detained due to concerns about her substance use, her mental health, and concern that he was being exposed to domestic violence. In December 2016, Mikahla W. was removed from her father and maintained with mother due to concerns about the father's substance abuse. Nearly a year later, Mikahla was removed from mother due to her substance use, though she was returned to mother in August 2018 under a family maintenance plan. Meanwhile, in July 2018, Mikahla's half brother, Sterling S., was maintained in mother's care while she was transitioning to a family maintenance plan with Mikahla. Mother completed her case plan and, in June 2019, was reunited with Mikahla and obtained sole legal custody of Sterling.

This case began three months later, when Mikahla and Sterling came to the attention of the San Bernardino County Department of Children and Family Services (the department) on an immediate response referral alleging neglect and caretaker absence or incapacity. At the time, Mikahla was two years old and Sterling was one year old. Sterling's father reported mother had resumed drinking and taking drugs after the prior dependency ended and said she had left the children alone in the care of a new roommate. Sterling's father said he had visited the home to retrieve some things, and the roommate

told him mother was away getting high.

A sheriff's deputy conducted a welfare check and found the children alone with the roommate, who was a known felon and had an outstanding misdemeanor warrant. Mother returned home during the welfare check, and the deputy reported mother was under the influence and had admitted using mushrooms. The deputy arrested mother for child endangerment. The children's maternal grandfather tried to take the children, but department social workers arrived and detained the children. Social workers reported a foul smell in the driveway and inside found the home disorganized with piles of clothes, the kitchen sink full of dirty dishes and rotting food, dirty diapers on the floor, couch and furniture, trash bags in the kitchen and living room, and a bag full of empty liquor bottles.

A social worker interviewed mother by phone the next day. Mother denied she had been under the influence of drugs. She reported being diagnosed with bipolar disorder as a teenager and depression as an adult, but said she wasn't taking medications. She had a prior criminal record that included burglary, transporting a controlled substance and three incidents of possessing controlled substances. On September 5, 2019, the children were placed together in foster care.

The social worker prepared section 300 petitions alleging the children had suffered neglect and were at risk of neglect due to mother's substance abuse, mental health problems, failure to provide adequate care due to the condition of her home, and her recent arrest, which left the children without support and supervision. (§ 300, subd. (b) & (g).) The petitions also alleged the children had previously been adjudged dependent

4

children and were again at risk from mother's substance abuse. (§ 300, subd. (j).)

The petitions also contained allegations about the children's fathers. Sterling's petition alleged his father had a substance use problem that put the child at risk and had failed to make any efforts to provide the child with the basic needs. (§ 300, subd. (b) & (g).) Mikahla's petition alleged her father's whereabouts were unknown and he had failed to make any efforts to provide her with basic needs.[1] (*Ibid.*)

At a September 9, 2019 detention hearing, the court found a prima facie case for detaining the children. The court ordered weekly supervised visits.

B. *Jurisdiction and Disposition*

The social worker prepared a jurisdiction/disposition report recommending the court find the section 300 allegations true and deny mother and Sterling's father reunification services under section 361.5, subdivision (b)(10) and (11).

The social worker reported mother blamed the situation on Sterling's paternal grandmother. She denied using drugs and claimed that a text message she had sent to Sterling's father a few days earlier saying she was "on shrooms" was a joke. She also denied admitting to the sheriff's deputy that she had been under the influence the day of her arrest. She said she wasn't taking medications for her mental health problems because her doctor had concluded the medication caused more negative side effects than relief. She said her doctor was trying other ways to treat her condition. The social worker asked her to provide documentation from the doctor, but she didn't.

---

[1] Mikahla's father never appeared and isn't a party to this appeal.

Mother also denied the allegations that she left the children alone with a known felon. She said she had left them with a neighbor who is a foster parent, and only while she was gone to have her car repaired. She said the man with whom the deputy found with her children was in the home only to help with home repairs and reported law enforcement told the neighbor who was watching her children to leave when they arrived. However, mother couldn't provide the supposed babysitter's last name or contact information. Sterling's paternal grandmother told the social worker mother hadn't allowed her to visit the children since the earlier dependency case was dismissed except for a few times mother needed an overnight babysitter. She said the children would arrive dirty and hungry. She also said she had seen mother's car at a tire shop which is known for drug activities.

The social worker also interviewed Sterling's father. He reported he was homeless and also actively using methamphetamines. He said he was "doing things he is not supposed to be doing and most likely will be in jail soon." Asked whether he was staying with mother and the children, he hesitated the said, he "has been staying there, hung out a little bit but not living there." He said he didn't know whether he would participate in services because he doesn't like people telling him what to do. He changed his story about mother, however, reporting she told him she wasn't using drugs and he believes her. However, he maintained that he still believed mother left the children with the person he identified in his referral call.

In November 2019, the department updated their report to inform the court mother had begun participating in services. She was attending weekly parenting classes, had completed intake for a substance abuse outpatient program, and had been referred for general counseling. She reported attending 12-step meetings three times a week and had tested negative at random drug tests.

In January 2020, the department again updated their report to inform the court about incidents involving Sterling's father. The father had been arrested for a parole violation in November near mother's home. A week later, he was released and Sterling's paternal grandparents paid for a motel room on the understanding mother wouldn't be there. Two days later, mother went to the father's room where they got into an argument, and mother called law enforcement. She said she went to his room to give him her food stamp card. Later in November, the social worker advised mother to stay away from Sterling's father and she said she had not been around him. However, Sterling's paternal grandfather told the social worker he later followed mother to father's motel room and kicked her out. On December 6, 2019, father was arrested at mother's home for a parole violation. He was staying at mother's home again three days after his release.

In a separate update, the social worker advised the court mother said she had finished her therapy. However, the social worker was unable to verify her report. Mother also said she had been attending parenting classes, but she didn't provide her signature card showing attendance, and the social worker wasn't able to otherwise verify her attendance. Mother had also not provided documentation showing she had been attending

12-step meetings despite numerous requests made by the social worker. Mother did continue to test negative for drugs, but Sterling's father did not show up for his tests. The social worker also reported getting in touch with the person mother had claimed was a foster parent who was watching the children on the night they were detained. He denied mother had left the children with him but said he had been at the home visiting and said mother's roommate had just finished making the children dinner when the authorities arrived. The social worker confirmed he was not in fact a foster parent.

At the January 17, 2020 contested jurisdiction/disposition hearing, mother brought updates to her services showing she had been attending therapy, a substance abuse program report showing she tested negative one time and did not meet the criteria for outpatient services, and a letter showing she had attended four parenting education sessions.

Mother also testified at length, contesting most of the allegations against her. She denied she had used drugs at all the night her children were detained. She claimed she had been completely sober for nearly four years. She said the text message she had sent to Sterling's father a few days before saying she was taking mushrooms was an ill-considered joke. She said she had been diagnosed as bipolar long before but wasn't taking medications because her symptoms were mild and the relief they provided was outweighed by negative side effects. Mother also denied leaving the children alone with a known felon. She said a handyman was present as well as a neighbor and his daughter when she left to have her car repaired. Finally, she rejected the description of her home as

being in terrible condition. She said there was laundry waiting to be sorted and put away and a bag of recycling that had burst open. She claimed she had retrieved the alcohol bottles from the convenience store where she worked to supplement her income by recycling them. She denied drinking alcohol. She also pointed out that the district attorney had not prosecuted her on the child endangerment charge.

After mother testified, the court dismissed the section 300(b)(2) allegation regarding her mental health issues and the section 300(g) allegation regarding her arrest. However, the court found the other allegations true. The court based that finding on its conclusion that mother's testimony wasn't credible because it would require concluding everyone else had lied. The court also bypassed reunification services under section 361.5, subdivisions (b)(10) and (11). The court noted mother had been engaged with the juvenile dependency system for over four and a half years, had received a number of services, and demonstrated that she could complete a case plan. However, the court concluded it had "no faith that she could then institute a period of stability and sobriety that would allow for ultimate return of these children." The court noted the prior dependency cases had been only two months before "the chaos continued and the children were thrown back into the exact situation." The court declared the children dependents of the court, removed them from mother, denied reunification services, and set a section 366.26 hearing.

Mother filed a notice of intent to file a writ petition, but we dismissed the notice on February 24, 2020 when she failed to file the petition (case No. E074519) in a timely fashion.

C. *Termination, Permanent Plan, and Changed Circumstances Petition*

The social worker's section 366.26 report recommended the trial court terminate parental rights and implement a permanent plan of adoption for the children. The children had been placed with Sterling's paternal grandparents on September 30, 2019. Though the grandparents were biologically related to Sterling but not Mikahla, they wanted to adopt both children so that they wouldn't be separated. The grandmother said it was sometimes difficult to deal with Mikahla but said they "have a special relationship." The grandfather said Mikahla "is an innocent in this situation and she's improved so much in my care. I want her in my family, as I know she'll be safe with us." The social worker noted the children go to the prospective adoptive parents for comfort and affection and appear to be content, secure, and fairly well adjusted.

The department reported mother was consistent with supervised visits, but her behavior was described as hostile and aggressive. At times, she screamed and yelled and made threatening remarks in front of the children. They reported she violated visitation rules by calling people during her visits despite being told not to do so. In a case update filed in June 2020, the social worker reported mother was participating in services on her own, was no longer socializing with Sterling's father, was working full-time, had purchased a new car and obtained a loan to purchase a home.

10

On July 10, 2020, mother filed a section 388 changed circumstances petition requesting reunification services and increased visitation. She said she had completed twelve parenting courses, attended individual counseling, was employed and had suitable housing. She said she continued to have as much contact with the children as allowed, and the children knew her as their mother and were bonded to her.

The department recommended the section 388 petition be denied. They noted Sterling's father was arrested in January 2020 and sentenced to participate in a substance abuse program. He was released in April 2020. On June 3, 2020, a warrant was issued for a drug charge and the warrant remained active. The social worker was aware mother continued to associate with Sterling's father. Mother and father had recently signed a birthday card together for Sterling, and father worked at the store where mother worked. Father also indicated he was still residing with mother at her trailer. Father failed to complete his previous family reunification services. Mother was aware he had not addressed his substance abuse addiction and continued to engage in drug activity. The department argued mother lacked commitment to the children but continued to support Sterling's father despite his drug use.

On August 11, 2020, the court denied the section 388 petition without ordering an evidentiary hearing. In its ruling, the court noted mother had demonstrated the ability to complete a case plan but needed to demonstrate the ability to benefit the children by providing stability and consistency over time. The court concluded she had repeatedly failed to do that. It noted Mikahla had been removed twice because of mother's failure to

protect the child and there was no basis for thinking anything had changed. Though mother's counsel argued against accepting the word of Sterling's paternal grandmother who said mother and father were still consorting, the court refused to disregard the evidence because mother's response to allegations throughout the case had been to deny the statements in the face of "blatant evidence to the contrary." The court concluded on that basis that mother's denials were not sufficient to warrant an evidentiary hearing.

At the August 28, 2020 contested section 366.26 hearing, after mother testified, the court examined the parental benefit exception. It noted mother had been consistent in visitation. As to her fulfilling the parental role for the children, the court noted Mikahla had been removed twice and both children had been out of mother's care for over a year since their removal, and mother had not progressed beyond weekly supervised visits. The court concluded there was no evidence termination of parental rights would be detrimental to the children. Even if termination were detrimental in some measure, the court concluded that adoption by the grandparents outweighed the detriment of removal. Mother had been embroiled in the dependency system over five years, when factoring in her older child, and there was no likelihood of reunifying. The court found the detriment of severing rights would not outweigh the benefit of a permanent placement and so concluded the parental benefit exception didn't apply. The court therefore terminated parental rights of mother and both fathers.

Mother and Sterling's father filed timely notices of appeal.

# II

# ANAYSIS

A. *Mother's Section 388 Petition*

Mother argues the trial court erred by summarily denying her petition to change its reunification and visitation orders.[2] She contends she made a prima facie case her circumstances had changed, which required the trial court to hold an evidentiary hearing under section 388, subdivision (d). We disagree.

A trial court may change, modify, or set aside a juvenile court order "under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new or changed circumstances exist, and (2) the proposed change would promote the best interest of the child. [Citation.] The parent bears the burden to show both a ' "legitimate change of circumstances" ' and that undoing the prior order would be in the best interest of the child." (*In re S.J.* (2008) 167 Cal.App.4th 953, 959.) The change in circumstances must be substantial. (*In re Heraclio A.* (1996) 42 Cal.App.4th 569, 577.) A petition must allege changed circumstances, not merely circumstances are in the process of changing. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.) Addressing a section 388 petition lies within the discretion of the juvenile court, and we will not overturn its decision unless the juvenile court clearly abused that discretion by making an arbitrary, capricious or patently absurd determination. (*In re S.J.*, at pp. 959-960; *In re A.S.* (2009) 180

---

[2] Sterling's father has not submitted a brief in this court, but submitted a letter joining mother's arguments.

Cal.App.4th 351, 358.)

Here, there were several causes of the removal from mother's custody. She abused drugs, failed to maintain healthy conditions in her home, left her children alone without adequate supervision, and exposed them to Sterling's father who himself had serious, long-term drug problems. Mother contends she alleged a change in circumstances. Her petition points out she had completed parenting courses, attended individual counseling, was employed and had suitable housing. She said she continued to have as much contact with the children as allowed, and the children knew her as their mother and were bonded to her.

The trial court accepted mother's representations about these steps but found them insufficient to show changed circumstances. As the trial court pointed out, mother had established in a prior dependency that she was capable of following and even completing a case plan, but she also had shown insufficient commitment without monitoring that she would protect the children from further danger. Thus, completing parenting classes and therapy didn't really address the root cause of the removal or give the trial court confidence in her ability to parent effectively. The court reasonably concluded mother had not alleged a change in the circumstances that had put the children at risk.

Mother argues the trial court erred in refusing to hold an evidentiary hearing to hear testimony and resolve factual questions where the evidence was in conflict. She doesn't identify exactly what evidence is in dispute, but it appears to concern whether she had ended her relationship with Sterling's father. Sterling's paternal grandmother

14

reported mother continued to associate with the father, and the social worker reported father said he was residing with mother. At the hearing, mother's counsel argued against accepting the word of the grandmother. Had the trial court allowed testimony, mother could have cross-examined the grandmother on the point. (See *In re Clifton V.* (2001) 93 Cal.App.4th 1400, 1405 (*Clifton V.*) [due process violated where trial court denied a section 388 evidentiary hearing and instead resolved a key factual dispute that required credibility determination].)

The problem with mother's argument is the trial court accepted the truth of the representations in her petition but found them to be insufficient despite the factual dispute. Unlike in *Clifton V.*, the disputed facts weren't critical to deciding the section 388 petition. In *Clifton V.*, "mother's lack of visitation was *the key factor* in DCFS's recommendation, mother's *section 388 petition ultimately focused on* whether or not mother was visiting Clifton more frequently" and ultimately, the trial court resolved "a clear credibility contest between mother and the paternal grandmother . . . based solely on the parties' written submissions and argument of counsel." (*Clifton V.*, *supra*, 93 Cal.App.4th at pp. 1403, 1405, italics added.) Here, ending the relationship didn't even figure in mother's petition. Instead, she focused on the fact that she had undertaken reunification services on her own and obtained stable employment and housing. The court credited her claims but concluded they didn't warrant reconsidering the denial of reunification services and there was no need to hold a hearing to resolve the conflict about the status of her relationship with father.

Even if mother had presented facts that could demonstrate a substantial change in the relevant circumstances, she didn't show providing her with additional reunification services would be in the children's best interest. Once reunification services are denied or terminated, " 'the focus shifts to the needs of the child for permanency and stability.' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) Both Mikahla and Sterling had been out of mother's care for most of their young lives and they had settled in their prospective adoptive home. Granting a section 388 petition would delay selection of a permanent home for the children and not serve their best interests. (*In re Casey D.*, *supra*, 70 Cal.App.4th at p. 47.) Moreover, as the trial court pointed out, mother had completed a case plan in the prior dependency but resumed the behaviors that had put the children at risk almost immediately after the dependency ended. " 'Childhood does not wait for the parent to become adequate.' " (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 224.) We cannot conclude the trial court acted unreasonably or arbitrarily in finding it would be detrimental to disturb the growing bond between the child and his prospective adoptive family and to introduce further delay in the adoption process. Denial of the petition was proper.

B. *The Beneficial Relationship Exception to Termination of Parental Rights*

Mother argues the trial court erred in failing to find the parental benefit exception to terminating parental rights applied to her children. We find no abuse of discretion.

The Legislature prefers adoption where possible. (*In re L. Y. L.* (2002) 101 Cal.App.4th 942, 947.) Once the juvenile court finds a child is adoptable, the parent bears

16

the burden of proving one of the exceptions to terminating parental rights exists. (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1343.) "[I]t is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement." (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350.)

The exception at issue here, commonly called the parental benefit exception, "applies when there is a compelling reason that the termination of parental rights would be detrimental to the child. This exception can be found only when the parents have maintained regular visitation and contact with the child *and* the child would benefit from continuing the relationship." (*In re Anthony B.* (2015) 239 Cal.App.4th 389, 395; see also § 366.26, subd. (c)(1)(B)(i).) California courts have interpreted this exception to apply to only those parent-child relationships the severance of which "would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.)

"[T]he court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re J.C.* (2014) 226 Cal.App.4th 503, 528-529.) We defer to the juvenile court's determination whether a beneficial parental relationship exists, reversing only where the court has abused its discretion by basing findings of fact on less than

17

substantial evidence or by acting arbitrarily or capriciously in determining whether the relationship provides "a 'compelling reason' for finding detriment to the child." (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1315.)

Here, mother has not even arguably established severing the parent-child relationship would deprive Mikahla and Sterling of a substantial, positive emotional attachment. Indeed, there is little in the record to establish a parental relationship existed at all. Both children were very young when detained from mother's care. Mikahla had been removed twice and both children had been out of mother's care for over a year this time through the system. Moreover, mother had not progressed beyond weekly supervised visits. After she regained custody of Mikahla in a prior dependency, she placed the children at risk by leaving them in the care of a stranger, descending back into drug use, and maintaining contact with Sterling's father who had unresolved drug use problems. Though mother claims she had resolved those problems, it appeared she continued to prioritize her relationship with Sterling's father over the well-being of her children.

At the permanency stage, we must balance the bond the child shares with the parent and the harm that might arise from terminating parental rights against the benefits of a permanent stable home, and "it is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement." (*In re Jasmine D.*, *supra*, 78 Cal.App.4th at p. 1350.) The parental benefit exception will apply only where the parent has demonstrated the benefits to the child of continuing the

parental relationship outweigh the benefits of permanence through adoption. Nothing in this record suggests any benefit the children might gain by continuing their relationship with mother outweighs the well-being they would gain from having a permanent home.

We cannot conclude the trial court acted arbitrarily and without substantial evidence by determining the parent-child bond did not override the children's need for the stable, permanent home.

## III

## DISPOSITION

We affirm the trial court orders and the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH
J.

We concur:

RAMIREZ
P. J.

CODRINGTON
J.