Filed 10/6/23  In re I.S. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re I.S., et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E081279 |
| Plaintiff and Respondent, | (Super.Ct.No. INJ2000141) |
| v. | OPINION |
| M.O., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Natalie M. Lough, Judge.

Affirmed.

Marisa L. D. Conroy, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Julie K. Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Mother appeals following a judgment terminating her parental rights to her three children pursuant to Welfare and Institutions Code[1] section 366.26. She challenges the denial of her petition to modify the prior court order, filed pursuant to section 388, terminating her reunification services. We affirm.

## BACKGROUND[2]

Mother's children, I.S., S.O, and L.O., came to the attention of the Riverside Department of Public Social Services (the department) after mother found her younger sibling unconscious due to a drug overdose in the family's residence; mother's sister was subsequently declared dead. The deceased minor sister had been left in the care of mother and the maternal great grandfather at the time of her death.

Mother informed the emergency response worker that she had given custody of her children to her mother (maternal grandmother) because she could not care for them due to her drug dependence of longstanding. Mother was transient and admitted to recent use of methamphetamine and a current need for substance abuse treatment. Mother also indicated she suffered from an anxiety disorder for which she had been prescribed Xanax, but she did not take the medication.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2] Neither father has appealed. References to them are made to provide context only.

The alleged father of I.S. is C.S., who had never had a relationship with the child; mother named another man, D.Z., then currently in jail, as I.S.'s presumed father. Mother named B.O., a transient and a heroin addict, as the father of S.O. and L.O. At the time of the intervention by the department, mother was pregnant with her fourth child.[3] The children were placed in protective custody on May 20, 2020.

On May 22, 2020, the department filed a dependency petition on behalf of the three children under section 300, subdivisions (b)(1) and (g), based on mother's failure to supervise, protect, or provide for the children due to mental illness and use of controlled substances. The allegations under section 300, subdivision (g), pertained to fathers C.S. and B.O., who failed to provide for the children or protect them. On May 26, 2020, the court ordered the children detained in the temporary custody of the department. The court also determined that the Indian Child Welfare Act (ICWA) may apply.[4] B.O., who had been married to mother previously, was declared the presumed father of S.O. and L.O.

On June 10, 2020, the department filed an amended petition in which it added allegations regarding father B.O.'s chronic use of heroin, his criminal history that

---

[3] Not much additional information about this pregnancy is included in subsequent reports. However, in July 2021, in setting the 12-month review hearing for contest, the trial court referred to the fact the case involved a deceased child.

[4] According to the detention report, mother is a registered member of the Salt River Pima-Maricopa Indian tribe, but her children had less than the requisite 25 percent Indian blood, so they are not eligible for membership. As a consequence, that tribe, as well as the Gila River Indian Community, did not intend to intervene. The tribes were duly noticed, and mother raises no appellate claims relating to the adequacy of the ICWA notices or the department's inquiry into the children's Indian status.

includes a violent crime, and his mental health issues based on a diagnosis of Attention Deficit Hyperactivity Disorder, for which he does not take prescribed medication. It also modified the section 300, subdivision (g) allegation to reflect that he was currently incarcerated and unable to arrange for the care of his children.

In its jurisdiction/disposition report, the department recommended true findings on allegations of the amended petition and that the children be declared dependents. The department recommended that the children be removed from mother and both fathers, with reunification services to be provided to mother. As to father C.S., the department recommended no services because he was an alleged father, only; as to father B.O., the department recommended that services be denied pursuant to section 361.5, subdivision (b)(12) and (b)(13).

In an addendum to the jurisdiction/disposition report, the social worker indicated that mother had enrolled in a substance abuse program but had not enrolled in parenting classes or counseling; in addition, her hair follicle test was positive for amphetamine and methamphetamine, and she had missed two random drug tests. A later addendum report indicated mother had missed two additional random drug tests (attributed to lost identification), and she was on suspension from parenting classes due to being on quarantine for Covid-19. She was consistent in visits with the children.

The jurisdiction/disposition hearing took place on August 24, 2020. The court made true findings on all allegations of the petition and declared the children dependents. The court made findings pursuant to section 361.5, subdivision (b)(12) and (13), removed

4

the children from the custody of mother and both fathers,[5] and ordered mother to participate in court-ordered reunification services, but denied reunification services to both fathers.

In the six-month status review report submitted on January 29, 2021, the social worker informed the court mother was pregnant, that she was visiting the children telephonically on a consistent basis, but that she had entered, withdrawn, and re-entered in patient substance abuse programs, her last re-entry occurring on January 22, 2021. She had just enrolled in parenting classes on January 7, 2021. The social worker recommended continuing mother's reunification services for another six months. The social worker also recommended that the court find ICWA does not apply based on the responses received by the tribes indicating the children were ineligible for membership. At the six-month review hearing held on February 10, 2021, the court adopted the social worker's recommendations, continued mother's services for an additional six months, and found that ICWA did not apply.

In June 2021, the social worker submitted her 12-month review report, in which she recommended terminating mother's services and setting a hearing to select and implement a permanent plan pursuant to section 366.26. The reasons for the recommendation related to mother's inconsistency with her case plan services, leaving her drug treatment programs after a short period and re-entering treatment right before a

_____

[5] Removal from mother was made under section 361, subdivision (c)(1), while, as to fathers B.O. and C.S., the removal was ordered pursuant to section 361, subdivision (d).

court hearing. Mother had not submitted any random drug tests at the request of the social worker, although while in treatment she tested clean. Her visits had also been inconsistent for part of the reporting period, becoming more consistent after her most recent re-entry into a substance abuse program.

However, on July 29, 2021, the social worker submitted an addendum report with a new recommendation. Mother had given birth to a baby during the interim between reports, resulting in a new referral being generated; however, mother had received good reports regarding her participation in the drug treatment program and commitment to sobriety. The new recommendation was to continue services for another six months and to liberalize visitation, with authorization for overnights and placement of the children in family maintenance.

On August 2, 2021, the department submitted an out of custody hearing report, recommending that the infant, J.J., be maintained in mother's custody with departmental supervision. A new original dependency petition is mentioned in the minutes of an out of custody initial hearing respecting J.J., the after-born sibling. The court ordered that the child remain in mother's care, but she was detained from her father, A.J., who was deemed an alleged father. An amended petition was filed on September 16, 2021, alleging the J.J. came within the provisions of section 300, subdivisions (b)(1) and (g), because mother admitted using drugs while pregnant, as well as the same allegations of the siblings' petitions.

The contested 12-month review hearing relating to the older siblings was held on August 3, 2021, at which time the court continued reunification services for mother and

6

liberalized visitation, which was increased to include unsupervised day visits, overnight and weekend visits, and placement of the children in mother's custody with family maintenance services upon mother's continued case plan compliance. Mother was ordered to make J.J. available to the child's attorney and investigator. As of August 8, 2021, mother successfully completed the residential drug treatment program.

In the meantime, on September 21, 2021, the court conducted the jurisdiction hearing respecting J.J. The court ordered the infant J.J. detained. The department made an application for issuance of a protective custody warrant for J.J. The application indicated that mother had not been returning calls from Riverside University Health Services to reschedule her substance abuse screening. When the social worker was unable to reach mother by phone or text message, contact was made with the maternal great grandfather who stated that he had come home from work on September 21, 2021, to find that mother and baby were gone. On September 30, 2021, a bench warrant was issued due to mother's failure to appear. On October 19, 2021, mother failed to appear at the disposition hearing, which had to be continued.

On October 26, 2021, the social worker submitted her report for the 18-month status review hearing. The department recommended termination of services, referral for a section 366.26 hearing, and a reduction of visitation.

On November 5, 2021, the court conducted the 18-month review hearing respecting the three older children. Mother was not present at the hearing. The juvenile court terminated mother's reunification services and set the matter for a hearing to select

and implement a permanent plan under section 366.26.  This disposition hearing as to infant J.J. had to be continued because neither mother nor child could be located.

On February 18, 2022, the department submitted a section 366.26 report respecting the three older siblings.  The department noted that the caregiver for L.O. was not open to providing a permanent home for the child, while the caretaker for I.S. and S.O. wanted more time before making a commitment.  The department sought to continue the hearing on the selection and implementation of a permanent plan to allow it to search for an adoptive home.  The section 366.26 hearing was continued so that the department could locate a family willing to adopt the children.

On April 27, 2022, J.J. was located with the mother in a motel in Indio, California, and was taken into temporary custody.  On June 23, 2022, the department submitted an addendum report for the disposition hearing for J.J., recommending that the court deny reunification services and proceed with setting a section 366.26 hearing.  In July 2022, mother requested additional service referrals for parenting education, substance abuse treatment and counseling, but due to mother's failure to provide an address, no referrals could be made.

On August 26, 2022, the court held the contested disposition hearing respecting J.J., at which it followed the department's recommendations by a removal of custody of

8

the child from both parents, denied reunification services,[6] set a section 366.26 hearing, and ordered visitation one time a month for one hour, supervised.

On November 22, 2022, the department reported that mother was living with her mother in Desert Hot Springs, working at a hotel as a housekeeper, taking parenting and domestic violence classes in order to "do right" with her current pregnancy. However, mother did not produce any evidence of participation in classes. Regarding the three older children, only the caretaker of L.O. had indicated a commitment to provide a permanent home for the child, so the department continued to search for an adoptive home for I.S. and S.O. The court continued the section 366.26 hearing to give the department more time to identify an adoptive home for the children. J.J.'s hearing was also continued.

During the interim, mother pursued services: she obtained a parenting education certificate, attended a substance abuse program and Narcotics Anonymous meetings, and attended a positive parenting program. By way of an addendum report, the department recommended a permanent plan of legal guardianship for I.S. and S.O. with their current caretakers because they did not wish to be adopted.[7] The permanent plan for L.O. was adoption by her current caretakers, but additional time was needed to complete the

---

[6] As to A.J., father of J.J., services were denied under section 361.5, subdivision (a), whereas mother's services were denied under section 361.5, subdivision (b)(10) and (13).

[7] I.S. was 13 years old and S.O. was nine years old at the time of this report.

adoption assessment. The court continued the section 366.26 hearing again to complete the adoption assessment, and authorized increased visitation for mother, if appropriate.

The department continued to recommend termination of mother's parental rights as to J.J. On April 4, 2023, in its combined sections 366.3 and 366.26 report, the department revealed that in December 2022, mother had given birth to another child, Au.J., who is not a party to this appeal, resulting in a new immediate referral because mother had received minimal prenatal care, a red flag for neglect to hospital staff in light of the previous "full term fetal demise" after an earlier pregnancy within a two-year period. At the time of delivery, mother had an unnamed communicable disease for which both she and the infant were treated with antibiotics.

The report also noted that mother used controlled substances on and off during this pregnancy, and while she had obtained sobriety, she had no provisions for the baby at the motel where she and father A.J. resided. She commenced residence at a sober living facility in March 2023, where she intended to remain for six months. The department continued to recommend termination of parental rights to free J.J. for adoption by her current caretakers, with whom her newborn sibling had been placed. An adoption assessment was appended to the report, supporting adoption of J.J. by the caretakers.

On April 19, 2023, mother filed a section 388 petition to modify the prior court orders denying reunification services as to J.J., and terminating services respecting I.S., S.O., and L.O. As changed circumstances, mother asserted she had engaged in substance abuse and parenting programs as evidenced by the certificates previously filed. She asserted the requested change would serve the children's best interests because the

10

siblings have not had regular or consistent contact such that the requested modification would enable them to maintain their familial relationships.

The same day as she filed her modification petition, the court conducted the hearing on the selection and implementation of the permanent plans for the children. The court considered mother's petition and commended her on her progress. However, it noted mother had been entrusted with custody of J.J. but she had relapsed and "went missing" for months, only to resurface, pregnant with her next child, during which she again used drugs while pregnant. While mother appeared to be "doing fantastic" at that time, by history she had a pattern of relapsing. For that reason, the court agreed her circumstances were changing, but could not find changed circumstances without a lengthier period of sobriety. The court therefore denied the petition to modify the prior court orders as to all the children.

The court then proceeded with the selection and implementation of the permanent plans for J.J., terminating mother's parental rights to J.J. Mother appealed.

## DISCUSSION

Mother's sole argument is that the trial court abused its discretion in denying her petition to modify the prior order terminating her services as to I.S., S.O., and L.O., and denying services her services as to J.J. Mother asserts her petition should have been granted because she demonstrated changed circumstances and that the modification was in the children's best interests. Like the trial court, while we commend mother on her recent efforts, we disagree with her assertions.

11

A. *Standard of Review.*

We review the summary denial of a section 388 petition for an abuse of discretion. (*In re Samuel A.* (2020) 55 Cal.App.5th 1, 7; *In re Alayah J.* (2017) 9 Cal.App.5th 469, 478.) Under this standard, the trial court's ruling should not be disturbed on appeal unless an abuse of discretion is clearly established. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318 (*Stephanie M.*).)

B. *General Principles Relating to Petitions to Modify Prior Court Orders.*

A juvenile court order may be changed, modified, or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist, and (2) the proposed change would promote the best interests of the child. (§ 388; *Stephanie M.*, *supra*, 7 Cal.4th at pp. 316-317.) The parent bears the burden to show both a legitimate change of circumstances and that undoing the prior order would be in the best interest of the child. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 529 (*Kimberly F.*).) "Generally, the petitioner must show by a preponderance of the evidence that the child's welfare requires the modification sought." (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1228.)

Section 388 assures a parent the right to petition the juvenile court for modification of any of its orders based upon changed circumstances or new evidence. (§ 388; *In re Marilyn H.* (1993) 5 Cal.4th 295, 308-309 (*Marilyn H.*).) The procedure provides an "'escape mechanism'" for parents facing termination of their parental rights by allowing the juvenile court to consider a legitimate change in the parent's

12

circumstances after reunification services have been terminated. (*Marilyn H.*, at p. 309; see *In re Alayah J.*, *supra*, 9 Cal.App.5th at p. 478.)

To obtain the requested modification, the parent must demonstrate both a change of circumstance or new evidence, and that the proposed change is in the best interests of the child. (Cal. Rules of Court, rule 5.570(d) (rule 5.570); *In re Casey D.* (1999) 70 Cal.App.4th 38, 47 (*Casey D.*), overruled on another point in *In re Caden C.* (2021) 11 Cal.5th 614, 636, fn. 5.) However, "[t]o support a section 388 petition, the change in circumstances must be substantial." (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223; see *In re Heraclio A.* (1996) 42 Cal.App.4th 569, 577.) Moreover, once reunification services are ordered terminated or bypassed, and the focus has shifted from reunification to the child's need for permanency and stability, a presumption arises that "continued care [under the dependency system] is in the best interest of the child." (*Marilyn H.*, *supra*, 5 Cal.4th at pp. 309-310.) At that stage, inquiry into a child's best interests includes consideration of his or her need for permanency and stability. (*In re J.C.* (2014) 226 Cal.App.4th 503, 526-527.)

Further, to establish a prima facie basis for modification, the parent must show circumstances have actually changed not merely that they are in the process of changing. (*Casey D.*, *supra*, 70 Cal.App.4th at p. 47.) The change "must be of such significant nature that it requires a setting aside or modification of the challenged prior order." (*Ansley v. Superior Court* (1986) 185 Cal.App.3d 477, 485.) Showing that circumstances are in the process of changing is insufficient because of the interest in promoting stability

for the child, a concern that is heightened in cases like this where the children are of very young age. (*In re A.S.* (2009) 180 Cal.App.4th 351, 358; *Casey D.*, at pp. 48-49.)

In evaluating whether a petitioner has met the burden to show changed circumstances, the trial court considers: "(1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to *both* parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*Kimberly F.*, *supra*, 56 Cal.App.4th at p. 532.)[8] The juvenile court may also consider the reason the problem was not resolved, the passage of time since the child's removal, the relative strength of the bonds with the child, the nature of the change of circumstance, and the reason the change was not made sooner. (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 616; see *Kimberly F.*, at pp. 530-532.)

"Not every change in circumstance can justify modification of a prior order. [Citation.] The change in circumstances must relate to the purpose of the order and be such that the modification of the prior order is appropriate." (*In re A.A.* (2012) 203 Cal.App.4th 597, 612.) Generally, this means the change in circumstances must remove or ameliorate the problem that led to the prior order. (*Ibid.*)

---

[8] The department argues that the *Kimberly F.* factors are of limited value in providing guidance as to how to determine the child's best interests when analyzing a section 388 petition after services have been terminated, due to the shift in focus at that stage of the dependency. However, because we find there are no changed circumstances, we do not need to reach the best interests prong of section 388.

The petition is addressed to the sound discretion of the juvenile court, and its decision will not be overturned on appeal in the absence of a clear abuse of discretion. (*Stephanie M.*, *supra*, 7 Cal.4th at p. 318; *In re S.J.* (2008) 167 Cal.App.4th 953, 959-960.)

Here, the problem that led to the dependency was mother's chronic substance abuse, a problem of longstanding. Chronic substance abuse is a pernicious, difficult problem to overcome, and is often punctuated with alternating periods of sobriety followed by relapses. Thus, a parent afflicted with addiction must be "clean" for a much longer period than 120 days to show real reform. (*Kimberly F.*, *supra*, 56 Cal.App.4th at p. 531, fn. 9.)

Mother's recent sobriety reflects "changing," not changed, circumstances. (See, e.g., *Casey D.*, *supra*, 70 Cal.App.4th at p. 49.) Mother has a long history of chronic drug use and her efforts at rehabilitation have invariably been interrupted by many relapses, indicating she is in the early stages of recovery and is still addressing a chronic substance abuse problem, given her need of ongoing programs such as a sober living facility. This signifies that her substance abuse has not been ameliorated or eliminated yet, although they were "changing."

Throughout the dependency proceedings, mother engaged in services, but relapsed after a few months of progress. For this reason, a period of sobriety longer than a few months must be established to demonstrate her capacity to maintain a drug free lifestyle that will not endanger the health and safety of her children. Mother's current (at the time of the hearing) efforts, while commendable, did not include a sufficient period of sobriety

15

to demonstrate a substantial change of circumstances, given her pattern of similar accomplishments followed by relapses. Thus, the completion of a drug treatment program of such short duration, at this late stage, is not a substantial change of circumstances. (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223.)

The court did not abuse its discretion by denying the modification petition.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
      P. J.

We concur:

CODRINGTON
    J.

MENETREZ
    J.